### Ex parte CHAN SHEE.

(District Court, N. D. California, First Division. October 27, 1916.)

No. 16094.

1. ALIENS ⊜25—CHINESE PERSONS—RIGHT TO ENTRANCE.

The wife of a Chinese merchant, domiciled in the United States, is on proof of that fact entitled to enter herself.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 79–82; Dec. Dig. ⊜25.]

2. HABEAS CORPUS ⊜120—DEPORTATION OF ALIENS—PROCEEDINGS.

Petitioner, a native of China, who sought admission as the wife of a Chinese merchant, was denied admission by the Immigration Bureau on the ground that the marriage was not satisfactorily established. Demurrer to her petition for habeas corpus being sustained, she appealed, and was admitted to bail pending appeal. While liberated, petitioner was again married to the Chinese merchant, her alleged husband, according to the laws of one of the United States. Thereupon a newly engaged attorney applied for a reopening of the case, that new proof of the marriage might be introduced. The bureau advised the local commissioner of immigration that it would not consent to reopening the case for additional evidence so long as the appeal was pending, but that petitioner might dismiss the appeal and take her chance on being able to show that a reconsideration of the case should be had. Subsequently the bureau notified the commissioner that it would consider the second solemnization of the marriage as warranting an inference that petitioner and the merchant were not husband and wife at the time of her arrival, that it would prefer that she should prosecute her appeal, and that a reopening of the case would not be granted. _Held_ that, where the determination of the bureau not to reopen the case was not communicated to petitioner and she dismissed her appeal, the appeal being a valuable right, and petitioner being entitled to enter if she was the lawful wife of the Chinese merchant, her petition for a second writ of habeas corpus is not subject to demurrer, particularly as petitioner, if deported, might re-enter the United States.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 121; Dec. Dig. ⊜120.]

In the matter of the petition of Chan Shee for writ of habeas corpus. On demurrer to petition for writ. Demurrer overruled.

Francis H. Boland, of San Francisco, Cal., for petitioner.

John W. Preston, U. S. Atty., and Casper A. Ornbaun, Asst. U. S. Atty., both of San Francisco, Cal., for respondent.

DOOLING, District Judge. The applicant, Chan Shee, came here from China in December, 1914, and sought admission to this country as the wife of Louie On, a resident Chinese merchant. She presented as evidence of her marriage the certificate (in Latin) of a Catholic missionary, at Canton. Having been denied admission for the sole reason that the Immigration Department was not satisfied that the marriage

relation existed, she petitioned this court for a writ of habeas corpus, and upon a hearing had a demurrer to the petition was sustained, and the petition denied. She was accompanied on her trip here by one Louie Sing, an alleged son of Louie On. He also was denied admission, and likewise applied to this court for a writ of habeas corpus, which application was denied. During the pendency of these proceedings on habeas corpus the court received the impression that Louie Sing was the infant son of the applicant, Chan Shee, and was a babe in arms. Though denying the petitions for the writs of habeas corpus, the court acting on the belief that this was the case of a young mother with an infant babe, admitted both Chan Shee and Louie Sing to bail pending an appeal from the order of denial. It having later been called to the attention of the court that Louie Sing was 19 years of age, and the alleged son of Louie On by a former marriage, the order admitting him to bail was set aside, and he has since been deported. The order admitting applicant, Chan Shee, to bail, however, was permitted to stand pending her appeal. An appeal was taken by her to the Supreme Court, which was later dismissed under circumstances hereinafter detailed. After her appeal was taken, applicant, having changed her attorney, was advised by her present attorney that she and Louie On might be married according to the laws of the state of California, and such a marriage was in fact solemnized, both before a justice of the peace and a Catholic clergyman. Armed with certificates showing these facts, applicant applied to the Immigration Bureau for a reopening of her case, in order that new proofs of her marriage might be introduced and considered. To this application the Bureau replied as follows:

"Of course, the Bureau will not consent to reopen this case for the purpose of receiving and considering additional evidence, with a view to showing that this woman is the lawful wife of Louie On, so long as the matter is pending in the courts. If counsel desire to terminate the court proceedings and take their chance (with no positive assurance that the matter will be reopened before this service) on being able to convince the department that a reopening and reconsideration of the case should be had, they are at liberty to do so. You may advise Attorney Boland, therefore, that the Bureau considers that the case, in its present stage, is in no respect within its jurisdiction, and it will give no consideration to a request for a reopening so long as it is pending before the courts; and it can only promise him, if it is withdrawn from the courts, it will give earnest consideration to any evidence he may have to offer in support of an application for a reopening and reconsideration of the case on its merits."

Subsequently, but before the appeal was dismissed, and while applicant was seeking to learn from the Bureau if she might be permitted to remain on bail pending the hearing of her application to reopen the case, the Bureau in a communication to the local commissioner of immigration made the following statements:

"Inasmuch as an attempt seems to have been made to alter the status of the woman by having her marry, while conditionally enlarged, the party claimed as her husband at the time she was an applicant for admission, from which fact it may be justly inferred these parties did not sustain the relationship of wife and husband at the time of her arrival, as claimed, the department would prefer that she prosecute the action which she has instituted (or which has been instituted in her behalf) before the courts to a final conclusion in the

event she is desirous of further contesting the authority of the department to deport her. Accordingly, action looking to a reopening of the case will not be taken."

Of this communication the following portion only was conveyed to the applicant in a letter from the commissioner to her attorney:

"The department would prefer that she prosecute the action which she has instituted (or which has been instituted in her behalf) before the courts to a final conclusion in the event she is desirous of further contesting the authority of the department to deport her."

The fact that the Bureau would regard the marriage ceremonies performed in this state in such a light that "it might justly infer from them that the parties did not sustain the relationship of wife and husband at the time of her arrival," although made known to the local commissioner, was not disclosed to the applicant, nor was the concluding statement of the Bureau's communication that, "accordingly, action looking to a reopening of the case will not be taken."

The only information that she received was that the department would prefer that she prosecute her action before the courts to a final conclusion. But she had been informed by a previous letter that:

The "Bureau will give no consideration to a request for a reopening of the case so long as it is pending before the courts; it can only promise, if it is withdrawn from the courts, it will give earnest consideration to any evidence he may have to offer in support of an application for a reopening and reconsideration of the case on its merits."

The statements as to the light in which her marriage in this state would be regarded, and the declaration that "action looking to a reopening of the case will not be taken," were not made in response to an application for a reopening of the case, but in response to a proposal by applicant's attorney that, if the court proceedings were dismissed (under which she was at liberty on bail by order of the court), she might be permitted by the Bureau to remain at large under bond pending the consideration of the application for reopening. If, as appears, the Bureau had made up its mind not to reopen the case for the reasons disclosed in its letter to the commissioner, the applicant should have been advised of that fact before her appeal was dismissed, instead of being advised simply that the Bureau would prefer that she prosecute her action in the courts to a conclusion. The local commissioner had the views of the Bureau before him clearly expressed. He communicated to the applicant the least material of them, withholding from her the Bureau's views as to the effect of her marriage in this state, and the Bureau's declaration that "action will not be taken looking to a reopening of the case." Notwithstanding the declaration that the Bureau would prefer that she prosecute her case to a conclusion, but relying on its promise that it would, if the case were withdrawn from the courts, "give earnest consideration to any evidence offered in support of an application for a reopening and reconsideration of the case on its merits," the applicant dismissed her appeal to the Supreme Court, and renewed her application to the Bureau for "a reopening and reconsideration of the case on its merits." This applica-

tion was denied, and in a memorandum for the Secretary, signed by the Commissioner General are found the following statements:

"The woman had arrived at San Francisco destined to her alleged husband, a Chinese merchant, and accompanied by an alleged son of said merchant by a former wife. Both applicants were rejected, and on considering their appeal the department affirmed the decision of the commissioner at San Francisco. Petition was then submitted to the District Court for a writ of habeas corpus, but was denied. The case was then taken up by an attorney different from the one that had handled it before the department, in an effort to have the matter reopened, in so far as the woman was concerned; but the Bureau advised the San Francisco office that, of course, it would not consent to a reopening of the case for the purpose of receiving and considering additional evidence, as long as the matter was pending in the court (an appeal having been noted by counsel from the decision of the District Court), but that, if counsel desired to terminate the court proceedings and take his chance, with no positive assurance that the matter would be reopened, he was, of course, at liberty to do so. Then the attorney proceeded to have a marriage ceremony performed between the woman and her alleged husband, whereupon the department advised the San Francisco office that 'inasmuch as an attempt seems to have been made to alter the status of the woman by having her marry, while conditionally enlarged, the party claimed as her husband at the time she was an applicant for admission before your office, from which fact it may justly be inferred these parties did not sustain the relationship of wife and husband at the time of her arrival, as claimed, the department would prefer that she prosecute the action * * * before the courts to a final conclusion, in the event she is desirous of further contesting the authority of the department to deport her. Accordingly, action looking to reopening of the case will not be taken.'

"Notwithstanding this plain intimation that the case would not be reopened, the attorney has discontinued the court proceedings and resubmitted his application for reopening and reconsideration of the case. He alleges that he did not have the marriage contracted with any ulterior motive, but 'on account of the proprieties.' The Bureau does not take any stock in this attempted explanation, and of course recommends that the application for reopening be denied, and that the San Francisco office be instructed to proceed with the alien's deportation. She has had ample opportunity before this department to establish her claims, and has failed; she has resorted to the courts, and failed again."

This memorandum is inaccurate, so far as it suggests that the marriage ceremony was performed after the application to reopen the case was made. As a matter of fact it antedated the application, and was the real reason upon which the application was based. But the memorandum does the applicant a greater injustice in its assumption that she was informed of the Bureau's attitude in regard to her marriage in this state, and was also informed of what the memorandum calls "a plain intimation that the case would not be reopened"; this being the construction placed by the memorandum upon the declaration that "action looking to a reopening of the case will not be taken." This memorandum was approved by the Secretary of Labor, and upon it the application to reopen the case was denied.

About to be deported, the applicant, in view of these later proceedings, was permitted by the court to file here another petition for a writ of habeas corpus, to which a demurrer has been interposed.

[1, 2] The case thus presented is an unusual one. The only reason why applicant was denied admission was because she was unable to satisfy the Immigration Bureau that the marriage relation really ex-

isted between her and the resident merchant, Louie On. If this relation were established, her right to enter this country would be beyond question. She was admitted to the soil of the country by the order of the court admitting her to bail, although the order excluding her still remained in force. During the period that she has been on bail—that is, from September 16, 1915, she has lived with Louie On as his wife, and has at all times claimed to be such. The gravest doubt about the integrity of their relations is the one cast thereon by the Immigration Department by its refusal to accept as sufficient her proofs of their marriage. For the purpose, as her attorney declares, of removing this cloud, she has placed their relations beyond question. That by so doing she violated any law, or any of the conditions of her bail, cannot be contended, although the order admitting her to bail was not made in contemplation of any such action on her part. Her case is not the case of one who has entered the country surreptitiously, or in defiance of law, and it may well be that, as the doubt as to her marriage was the only thing that excluded her, when that doubt was removed, she would be entitled to remain, if such doubt were removed without violating any law, or any of the conditions upon which she was permitted temporarily to land. Still the court is not prepared to say that the Bureau was not entitled to take the view that her marriage in this state was a "fact from which it may justly be inferred these parties did not sustain the relationship of wife and husband at the time of her arrival," although it might, with at least equal propriety, have placed upon this marriage the other construction that it was consummated for the purpose of setting at rest any doubt as to the fact that she and Louie On were, as they constantly insisted, husband and wife. The fact that the Bureau took the above view of the marriage ceremonies performed in this state is most material when we consider that in the final denial of the application to reopen her case it was, no doubt inadvertently, assumed that this view, together with the Bureau's statement that "action looking to reopening of the case will not be taken" was communicated to applicant before she procured her appeal to the Supreme Court to be dismissed. The right to appeal is a valuable right, and no one is in a position to say what would have been the result if applicant had prosecuted her appeal to a conclusion. It cannot be said that the Bureau encouraged applicant to dismiss her appeal. On the contrary she was advised:

"That the department would prefer that she prosecute the action before the courts to a final conclusion in the event she is desirous of further contesting the authority of the department to deport her."

If this were all, applicant might not be in a position to complain of the action of the department in refusing to reopen her case after the dismissal of her appeal. But when this refusal is based upon the unwarranted assumption, as is evident from the records of the department itself, that before her appeal was dismissed she was informed that the evidence of her marriage in this state, which she desired to offer as proof of her right to enter, was regarded by the department as proof that she had no such right, and that the department had declared that "action looking to a reopening of the case will not be taken," I

cannot but feel that she has not been accorded that fair hearing upon her application, to which she is entitled under the law.

The demurrer to the petition must therefore be overruled. I have less hesitancy in entering this order, because I am convinced that, if applicant were at once deported under the original order, she could return upon the same boat, with full right to enter as the unquestionable wife of a domiciled merchant. The facts as stated herein are gathered from the petition itself, and the records of the Immigration Department, which, by stipulation, have been made a part thereof.

The demurrer to the petition is therefore overruled, and the writ will issue as prayed for, returnable October 30, 1916, at 10 o'clock a. m.