[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12506

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 23, 2012
JOHN LEY
CLERK

Agency No. A070-899-514


JIAN LE LIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 23, 2012)

Before WILSON, ANDERSON and HIGGINBOTHAM,* Circuit Judges.

_____

* Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit,
sitting by designation.

WILSON, Circuit Judge:

We are asked to decide whether the "departure bar" regulation—stating that the Board of Immigration Appeals ("BIA") may not entertain a motion to reopen filed by or on behalf of a person who has departed the United States—impermissibly conflicts with the Immigration and Nationality Act's provision permitting an alien to file one motion to reopen. *See* 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2(d). We join the Third, Fourth, Ninth, and Tenth Circuits in finding that it does.[1] *See Contreras-Bocanegra v. Holder*, 2012 WL 255879 (10th Cir. 2012) (en banc); *Prestol Espinal v. Att'y Gen.*, 653 F.3d 213 (3d Cir. 2011); *Coyt v. Holder*, 593 F.3d 902 (9th Cir. 2010); *William v. Gonzales*, 499 F.3d 329 (4th Cir. 2007).

I.

Petitioner Jian Le Lin is a native of China who illegally entered the United States in 1992. On November 2, 1998, Lin was issued a Notice to Appear and was charged as an alien present in the United States who had not been admitted or paroled, and subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). On

---

[1] The Sixth and Seventh Circuits, when presented with the question we confront in this case, addressed the validity of the BIA's *interpretation* of the departure bar. Relying on *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs*, 130 S. Ct. 584 (2009), they found it impermissible for the BIA to treat the departure bar as divesting the agency of jurisdiction. *See Pruidze v. Holder*, 632 F.3d 234 (6th Cir. 2011); *Marin-Rodriguez v. Holder*, 612 F.3d 591 (7th Cir. 2010).

March 29, 1999, Lin's application for asylum was denied, and he was ordered to be removed to China. On July 23, 2002, the BIA affirmed that order.

On December 27, 2010, Lin filed a motion to reopen his removal proceedings with the BIA. The motion was predicated on a request for asylum based on changed country conditions.[2] *See* 8 U.S.C. § 1158(a)(2)(D). He also requested that the BIA exercise its *sua sponte* authority to reopen proceedings. Lin then requested a stay of removal, which was denied. On April 7, 2011, Lin was removed from the country. On May 5, 2011, the BIA determined that Lin's motion to reopen should be considered withdrawn because of his departure, relying upon *Matter of Armendarez-Mendez*, 24 I. & N. Dec. 646, 660 (BIA 2008) (interpreting 8 C.F.R. § 1003.2(d) as divesting the BIA of jurisdiction to hear motions to reopen from persons outside the country). Lin now petitions for review.

## II.

In 1940, the Attorney General established the BIA, the highest administrative body for applying immigration laws. In addition to having the

---

[2] Generally a petitioner must file a motion to reopen within ninety days of a final order, 8 U.S.C. § 1229a(c)(7)(C), but there is no time limit on a motion to reopen if it relates to an asylum application that "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); *see also Pllumi v. Att'y Gen.*, 642 F.3d 155, 158 n.4 (3d Cir. 2011).

3

power to hear appeals from certain types of immigration decisions, the BIA was also empowered with the ability to reopen closed cases. *See* 8 C.F.R. § 90.10 (1940) (authorizing the BIA to hear motions to reopen). In 1952, the Attorney General constrained the BIA's discretion to hear motions to reopen by promulgating a departure bar—a regulation that added a physical presence requirement for consideration of a petitioner's motion to reopen. 8 C.F.R. § 6.2 (1952) (stating that the departure of an alien from the United States "shall constitute a withdrawal of such motion [to reopen]"). In 1961, United States Courts of Appeals were given the authority to entertain petitions for review of final administrative orders; that authority was similarly confined to consideration of petitions from persons present in the United States. 8 U.S.C. § 1105a(c) (1962).

In 1996, the Attorney General promulgated a regulation establishing that a petitioner could file only one motion to reopen and that generally such a motion had to be made within ninety days of the issuance of a final administrative decision. 8 C.F.R. § 3.2(c)(2) (1997). That same year, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-549. The IIRIRA, codifying the Attorney General's recently established regulations, stipulated that an alien could file one motion to reopen, 8 U.S.C. § 1229a(c)(7)(A), and that such a motion was

4

generally required to be filed within a ninety-day window, *id.* § 1229a(c)(7)(C)(i). IIRIRA also repealed the judicial departure bar and an accompanying provision that provided for an automatic stay of removal during the pendency of a petition for judicial review.  In 1997, the Attorney General established regulations implementing IIRIRA, including an administrative departure bar for motions to reopen.  8 C.F.R. § 3.2(d) (1997).

## III.

We evaluate whether an agency's regulation impermissibly conflicts with its governing statute by employing the two-step analysis of *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984).  The first step of our inquiry is to ask "whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron*, 467 U.S. at 842–43, 104 S. Ct. at 2781. If the statute is silent or ambiguous regarding a certain question at issue, we ask whether the agency's answer is based on a permissible construction of the statute. *Id.* at 843, 104 S. Ct. at 2782.

"We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself."  *Consumer*

*Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S. Ct. 2051, 2056 (1980). IIRIRA plainly provides that "[a]n alien may file one motion to reopen proceedings." 8 U.S.C. § 1229a(c)(7)(A). Other than the stated numerical limitation, IIRIRA's only other restriction on that ability is 8 U.S.C. § 1229a(c)(7)(C)(i): "Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." There are no geographical restrictions included in the statute that would qualify the circumstances under which an alien may file one motion to reopen. Nor does the term "alien" impute any such territorial restriction, given that the INA defines "alien" broadly as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).

The Attorney General argues that because IIRIRA does not specifically address the issue of an alien's physical presence in the United States, Congress has not spoken to the issue and thus the Attorney General is free to regulate in the statutory gap. We disagree. Congress clearly considered and included some restrictions on the ability to file a motion to reopen but chose not to make a limitation based on the alien's physical location. As the Third Circuit stated:

> [T]he Supreme Court has explained, "[w]hen Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered

6

the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58, 120 S. Ct. 1114, 1118 (2000). That inference is particularly strong when, as here, Congress specifically codified other regulatory limitations already in existence. Congress did not codify the post-departure bar notwithstanding its long history. Neither we nor the agency should be permitted to override Congress' considered judgment.

*Presto Espinal*, 653 F.3d at 221–22 (alterations other than the first in original); *see also William*, 499 F.3d at 333 ("[T]he fact that Congress provided for specific limitations on the right to file a motion to reopen bolsters the conclusion that § 1229a(c)(7)(A) cannot be read to except from its terms those aliens who have departed the country." (citing *Johnson*, 529 U.S. at 58, 120 S. Ct. at 1118)).

Furthermore, "[a] familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578, 126 S. Ct. 2749, 2765 (2006). The subsection of IIRIRA regarding deadlines for filing motions to reopen states that the ninety-day limit does not apply to such motions filed by victims of domestic violence, provided that "the alien is physically present in the United States at the time of filing the motion." 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV). Therefore, we can draw the negative inference that "Congress knew how to include a requirement of physical presence when it wished to do so," *William*, 499 F.3d at 333, and

7

intentionally chose not to require such presence for a motion to reopen, except in the specified circumstances.

Our conclusion that Congress intended to ensure aliens the right to file one motion to reopen regardless of their geographical location is further bolstered by IIRIRA's amendment scheme. As we outlined above, prior to the enactment of IIRIRA in 1996, both a statutory judicial departure bar and a regulatory administrative departure bar existed for motions to reopen. The judicial departure bar was accompanied by an automatic stay provision that prevented an alien from being removed while his petition to reopen was pending. One of Congress's express purposes in passing IIRIRA was "to make it . . . easier to remove deportable aliens from the United States." H.R. Rep. No. 104-469, pt. 1, at 157 (1996). To that end, IIRIRA eliminated the automatic stay provision—effectuating the goal of prompt removal—as well as the judicial departure bar—removing a disincentive for aliens to leave the country. Congress made a parallel choice regarding the administrative departure bar. IIRIRA codified the regulation granting a right to a motion to reopen, thus "transform[ing] the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien." *Dada v. Mukasey*, 554 U.S. 1, 14, 128 S. Ct. 2307, 2316 (2008). In doing so, Congress chose to exclude the administrative departure bar,

8

just as it had discarded the judicial departure bar.

This exclusion of the departure bar makes sense in the context of IIRIRA's other provisions. IIRIRA mandates that the Attorney General must remove an alien subject to a final order of removal within ninety days of the order being entered. 8 U.S.C. § 1231(a)(1)(A). Of course, IIRIRA also gives an alien the right to file a motion to reopen at any time before the ninety-day mark. 8 U.S.C. § 1229a(c)(7)(C)(i). Regarding this relationship, the Ninth Circuit expressed:

> It would completely eviscerate the statutory right to reopen provided by Congress if the agency deems a motion to reopen constructively withdrawn whenever the government physically removes the petitioner while his motion is pending before the BIA. The only manner in which we can harmonize the provisions simultaneously affording the petitioner a ninety day right to file a motion to reopen and requiring the alien's removal within ninety days is to hold, consistent with the other provisions of IIRIRA, that the physical removal of a petitioner by the United States does not preclude the petitioner from pursuing a motion to reopen.

*Coyt*, 593 F.3d at 907. We agree.

In conclusion, we find that the plain language of the statute, the statutory structure, and the amendment scheme all point to one conclusion: IIRIRA guarantees an alien the right to file one motion to reopen, and the departure bar impermissibly undercuts that right. We therefore grant Lin's petition for review and remand this case to the BIA for proceedings

9

consistent with this opinion.[3]

**PETITION GRANTED; REMANDED.**

---

[3] Because we grant Lin's petition on the ground that the post-departure bar regulation conflicts with 8 U.S.C. § 1229a(c)(7)(A), we need not address Lin's alternative argument that the BIA's interpretation of the departure bar as a jurisdictional limitation is impermissible.