# United States Court of Appeals
## For the First Circuit

No. 12-2270

VLADIMIR PEREZ SANTANA,

Petitioner,

v.

ERIC H. HOLDER, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard, Lipez, and Kayatta,
Circuit Judges.

Jeffrey B. Rubin and Kathleen M. Gillespie on brief for petitioner.
Trina Realmuto, with whom Beth Werlin was on brief, for American Immigration Council, National Immigration Project of the National Lawyers Guild, and Post-Deportation Human Rights Project, amici curiae.
Greg D. Mack, Senior Litigation Counsel, Office of Immigration Litigation, with whom Stuart F. Delery, Principal Deputy Assistant Attorney General, Civil Division, and Colin J. Tucker, Trial Attorney, Office of Immigration Litigation, were on brief, for respondent.

September 27, 2013

**LIPEZ, Circuit Judge**.  Born in the Dominican Republic in 1987, Vladimir Perez Santana immigrated to the United States and became a lawful permanent resident ("LPR") in 1997.  In March 2010, Perez Santana pled guilty in state court to one charge of possession of a controlled substance with intent to distribute.  He received a one-year probationary sentence.

The Department of Homeland Security ("DHS") placed Perez Santana into removal proceedings and found him both removable and ineligible for discretionary relief.  After the agency ordered his removal, Perez Santana sought vacatur of his criminal conviction on constitutional grounds.  Successful in this effort, he then filed a motion to reopen his proceedings before the Board of Immigration Appeals ("BIA"), seeking vacatur of his order of removal as well.  By the time he sought reopening, however, Perez Santana had already been removed to the Dominican Republic.  The BIA denied his motion, invoking a regulation known as the "post-departure bar," which precludes a noncitizen from filing a motion to reopen "subsequent to his or her departure from the United States."  8 C.F.R. § 1003.2(d).

Perez Santana petitions for our review, contending, inter alia, that the post-departure bar conflicts with the clear language of the immigration statute, which grants "[a]n alien" the right to file a single motion to reopen.  8 U.S.C. § 1229a(c)(7). We agree. The post-departure bar cannot prevent a noncitizen from invoking

his statutory right to file a motion to reopen. We therefore grant Perez Santana's petition.

## I.

The facts of this case are straightforward. Perez Santana was born in the Dominican Republic in 1987. When he was nine years old, he immigrated to the United States with his family as an LPR. On March 9, 2010, Perez Santana pleaded guilty in Massachusetts state court to one charge of possession with intent to distribute a class D substance, namely, marijuana. He was sentenced to one year of probation.

On September 7, 2010, Perez Santana was issued a notice to appear for removal proceedings, which charged that his criminal conviction was a drug trafficking aggravated felony under the immigration statute. See 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii). Three months later, the immigration judge ("IJ") found Perez Santana removable on the basis of his conviction, and also determined that because the conviction constituted an aggravated felony, he was ineligible for relief from removal. See 8 U.S.C. § 1229b(a)(3) (requiring that applicant for cancellation of removal for LPRs must not be convicted of "any aggravated felony"). Perez Santana sought review before the BIA, which applied its prior precedent on this subject and dismissed his

appeal.[1]  See Matter of Castro Rodriguez, 25 I. & N. Dec. 698, 702 (BIA 2012).  The BIA's order was entered, and Perez Santana's removal became final on April 16, 2012.

On May 23, 2012, Perez Santana filed a motion to withdraw his plea in the Massachusetts state courts.  He contended that under the Supreme Court's then-recent decision in Padilla v. Kentucky, 559 U.S. 356 (2010), his plea was taken in violation of his Sixth Amendment right to the effective assistance of counsel because he was not informed of the potential immigration consequences of his conviction.

While Perez Santana sought vacatur of his criminal conviction, he also sought to stay his removal before the DHS. Sometime in May 2012, DHS denied his request for a stay and deported him to the Dominican Republic on May 29, 2012.[2]

On July 11, 2012, after initially denying Perez Santana's motion to withdraw his plea, the Massachusetts court reconsidered

---

[1]  Although the validity of the agency's finding of removability is not before us, it is noteworthy that this determination relied on our opinion in Julce v. Mukasey, 530 F.3d 30 (1st Cir. 2008), which held that a Massachusetts conviction for possession of marijuana with intent to distribute was categorically a drug trafficking aggravated felony.  The Supreme Court abrogated Julce in Moncrieffe v. Holder, 133 S. Ct. 1678 (2013), holding that an analogous Georgia conviction for possession with intent to distribute was not a drug trafficking aggravated felony.  Id. at 1693-94.

[2] Perez Santana has not identified documentation in the record confirming that he sought and was denied a stay of removal, instead relying on assertions from his briefs to the agency.  The government does not dispute this fact, however.

-4-

and granted his motion. Perez Santana immediately filed a motion to reopen his removal proceedings before the BIA, eighty-eight days after his removal became final. He argued that because his criminal conviction was now vacated, it could no longer serve as a ground for his removal.

On September 24, 2012, the BIA returned Perez Santana's motion to the IJ without further action, concluding that the post-departure bar prevented him from filing a motion to reopen once he departed the United States. See 8 C.F.R. § 1003.2(d); see also id. § 1003.23(b)(1). The BIA also relied on its prior opinion in Matter of Armendarez-Mendez, 24 I. & N. Dec. 646 (BIA 2008), which held that the post-departure bar divested it of jurisdiction to consider a motion to reopen filed by a noncitizen subsequent to his departure from the United States.

Perez Santana timely sought review before this court of the denial of his motion to reopen.[3]

## II.

We review the BIA's denial of a motion to reopen for abuse of discretion. Bead v. Holder, 703 F.3d 591, 593 (1st Cir. 2013). Under this standard, the petitioner must demonstrate that "'the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way.'" Id. (quoting Raza v.

---

[3] Petitioner ceded his oral argument time to counsel for amici curiae, whom we thank for their able presentation of the arguments we address today.

-5-

Gonzales, 484 F.3d 125, 127 (1st Cir. 2007)). Perez Santana's primary contention is that the agency committed a legal error when it concluded that the post-departure bar divested it of the ability to consider his motion to reopen. Our review of legal questions is de novo, "with deference given 'to the BIA's reasonable interpretations of statutes and regulations falling within its purview.'" Aponte v. Holder, 683 F.3d 6, 10 (1st Cir. 2012) (quoting Matos-Santana v. Holder, 660 F.3d 91, 93 (1st Cir. 2011)).

**A.  The Motion to Reopen Statute and the Post-Departure Bar**

"The motion to reopen is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." Kucana v. Holder, 558 U.S. 233, 242 (2010) (quoting Dada v. Mukasey, 554 U.S. 1, 18 (2008)). The procedure is codified in a statute, 8 U.S.C. § 1229a(c)(7)(A), which provides that "[a]n alien may file one motion to reopen proceedings." The statute expressly prescribes other requirements, including that the motion "state the new facts that will be proven at a hearing to be held if the motion is granted," id. § 1229a(c)(7)(B), that the motion "be supported by affidavits or other evidentiary material," id., and that the motion "be filed within 90 days of the date of entry of a final administrative order of removal," id. § 1229a(c)(7)(C)(i). Importantly, the statute does not denominate a physical presence or geographic limitation in its general provisions.

The statute carves out certain exceptions to these general requirements. Applicants for asylum, for example, are exempt from the ninety-day time limit if their application is based on evidence of changed country conditions in the country to which they are to be removed, and "if such evidence is material and was not available and would not have been [previously] discovered or presented." Id. § 1229a(c)(7)(C)(ii). There is also a special rule for battered spouses, which extends the filing deadline to one year and waives the numerical limitation. Id. §§ 1229a(c)(7)(A), 1229a(c)(7)(C)(iv). In contrast to the statute's general provisions, the special rule for battered spouses requires the noncitizen to be "physically present in the United States at the time of filing the motion." Id. § 1229a(c)(7)(C)(iv)(IV).

In its current form, the post-departure bar comprises two separate regulations, one of which applies to motions filed before the BIA and the other to motions filed before the IJ. See 8 C.F.R. § 1003.2(d) (BIA); id. § 1003.23(b)(1) (IJ). Though codified in different sections, the regulations contain the same language:

> A motion to reopen . . . shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen . . . shall constitute a withdrawal of such motion.

8 C.F.R. § 1003.2(d); see also id. § 1003.23(b)(1).

-7-

The BIA has published a precedential opinion upholding the post-departure bar's validity. In Matter of Armendarez-Mendez, the BIA construed the post-departure bar as a limitation on its own jurisdiction and decided that the agency therefore lacked the power to entertain motions to reopen filed by noncitizens who had departed the United States. 24 I. & N. Dec. at 648-49, 660.

## B. Pena-Muriel and Subsequent Litigation Concerning the Post-Departure Bar

This case is not the first time we have addressed the validity of the post-departure bar. In Pena-Muriel v. Gonzales, 489 F.3d 438 (1st Cir. 2007), the petitioner asserted that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") abrogated the regulation we now know as the post-departure bar. This is true, the petitioner asserted, because IIRIRA repealed statutory provision 8 U.S.C. § 1105a(c) (1994) (repealed by Pub.L. No. 104-208, Title III, § 306(b), 110 Stat. 3009, 3009-612). The repealed statute precluded a federal court from reviewing "[a]n order of deportation . . . if the alien . . . has departed from the United States after the issuance of the order." 8 U.S.C. § 1105a(c) (1994).

Pena-Muriel contended that the post-departure bar was "inextricably linked" with this judicial review provision, and that its deletion "signaled [Congress's] intent" that the government should cease enforcing the post-departure regulation as well. Pena-Muriel, 489 F.3d at 441. We disagreed, explaining that "[t]he

Attorney General's authority to prohibit consideration of motions to reopen from aliens who have departed the United States did not originally depend upon the statutory language in § 1105a(c)." Id. Thus, that provision's repeal did not, by extension, abrogate the post-departure bar. Id.

Pena-Muriel petitioned for rehearing en banc, arguing that the text of the motion to reopen statute unambiguously gave a noncitizen the right to file a motion to reopen regardless of the noncitizen's geographic location at time of filing. See 8 U.S.C. § 1229a(c)(7)(A). Pena-Muriel's contention, raised for the first time via his petition, relied on a statutory provision separate from the repealed judicial review provision he invoked in the merits briefing. See Part II.C.2, infra. In our order denying the petition, we observed that "[w]hen this case was presented to the panel, petitioner [had] presented only one statutory argument." Pena-Muriel v. Gonzales, 510 F.3d 350, 350 (1st Cir. 2007). We added that, "[n]ot having been asked to do so, we did not decide" whether the post-departure bar conflicted with the motion to reopen statute, and we declined to resolve the question on rehearing. Id. As a result, the parties agree that our opinion in Pena-Muriel does not control the outcome of this case.

Since we decided Pena-Muriel, the validity of the post-departure bar has been the subject of substantial litigation in the federal courts of appeals. Six of our sister circuits have held

that the post-departure bar conflicts with the clear language of the motion to reopen statute.  See Garcia-Carias v. Holder, 697 F.3d 257, 264 (5th Cir. 2012); Lin v. U.S. Att'y Gen., 681 F.3d 1236, 1241 (11th Cir. 2012); Contreras-Bocanegra v. Holder, 678 F.3d 811, 819 (10th Cir. 2012) (en banc) (unanimously overturning prior panel decision); Prestol Espinal v. Att'y Gen., 653 F.3d 213, 217–18 (3d Cir. 2011); Reyes-Torres v. Holder, 645 F.3d 1073, 1076–77 (9th Cir. 2011); William v. Gonzales, 499 F.3d 329, 332 (4th Cir. 2007).  Another three have struck down the regulation as an impermissible contraction of the agency's jurisdiction, holding that the agency cannot disclaim authority that Congress has expressly conferred upon it.  See Luna v. Holder, 637 F.3d 85, 100 (2d Cir. 2011); Pruidze v. Holder, 632 F.3d 234, 239 (6th Cir. 2011); Marin-Rodriguez v. Holder, 612 F.3d 591, 595 (7th Cir. 2010).

As matters currently stand, the rule in every circuit to have addressed the arguments petitioner raises here is that the post-departure bar either conflicts with the motion to reopen statute, or cannot be justified as a jurisdictional limitation.

## C.  The Chevron Analysis

Against that backdrop, we now address whether the post-departure bar is a valid exercise of the discretion conferred upon the agency by the immigration statute. Resolution of this question requires that we apply the framework set forth in Chevron, U.S.A.,

Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). The Chevron inquiry proceeds in two steps. First, we look to the statute to ascertain whether "Congress has directly spoken to the precise question at issue." Id. at 842. If the statute is clear in its meaning, we must "give effect to the unambiguously expressed intent of Congress." Id. at 842-43.

The analysis begins with the statute's language. "In determining whether a statute exhibits Chevron-type ambiguity, . . . courts look at both the most natural reading of the language and the consistency of the 'interpretive clues' Congress provided." Succar v. Ashcroft, 394 F.3d 8, 22 (1st Cir. 2005) (quoting Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 586 (2004)). We may also look to legislative history "to see if any 'serious question . . . even about purely textual ambiguity' is left." Id. at 23 (quoting Gen. Dynamics Land Sys., 540 U.S. at 600).

Second, "[i]f, after applying these interpretive rules, we conclude that the statute is ambiguous," we move to the next step of the analysis. Saysana v. Gillen, 590 F.3d 7, 13 (1st Cir. 2009). Importantly, we take this step only "when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." Gen. Dynamics Land Sys., 540 U.S. at 600. At Chevron's second step, the inquiry focuses on "whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843. If so, we "defer to an

-11-

agency's interpretive regulation unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'" Saysana, 590 F.3d at 13 (quoting Chevron, 467 U.S. at 844).

Perez Santana contends that the plain language of the motion to reopen statute forecloses the agency from adding a geographic limitation to his ability to seek reopening of his proceedings. The government replies that the lack of an express geographic restraint should be construed as silence about the location of the noncitizen at time of filing. This silence, the government says, results in a statutory "gap" or ambiguity that the government is permitted to fill with the post-departure bar.

**1. The Statutory Text**

Looking first to the statutory text, the motion to reopen statute states that "[a]n alien may file one motion to reopen proceedings." 8 U.S.C. § 1229a(c)(7)(A). The immigration statute in turn defines "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). Thus, the provision unambiguously confers upon "an alien" the authority and the right to file a motion to reopen, in language that admits of no exceptions. See Dada, 554 U.S. 1, 15 (2008) ("[T]he statutory text is plain insofar as it guarantees to each alien the right to file 'one motion to reopen proceedings under this section.'" (quoting 8 U.S.C. § 1229a(c)(7)(A))). The relevant language nowhere

prescribes, or even suggests, a geographic restriction on an "alien [who] may file" the motion.[4]

The statute does describe other limitations and requirements on the right to file a motion to reopen, including numeric limitations, 8 U.S.C. § 1229a(c)(7)(A), evidentiary requirements, id. § 1229a(c)(7)(B), and time deadlines, id. § 1229a(c)(7)(C)(i). Once again, these particular exceptions do not contain restrictions based on geography or the location of the noncitizen at the time of filing. The absence of such a limitation, despite the explicit enumeration of others, serves as a strong indication that Congress imposed the restrictions that it deemed important and declined to impose others. Cf. United States v. Johnson, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that

---

[4] The government posits that relying on the words "an alien" would permit all sorts of noncitizens to file motions to reopen "without regard to any other circumstance or condition," such as "aliens who prevail in immigration proceedings, aliens who have never been in immigration proceedings, and aliens who have never even been in the United States." This attempt to conjure a parade of horribles is a chimera. For one, the motion to reopen statute is included in a set of provisions that prescribe the procedural requirements of removal proceedings. See 8 U.S.C. §§ 1229a(a)-(b). When read in context, the reopening statute clearly refers to noncitizens who are or have been the subject of such proceedings, not random noncitizens. We also question why noncitizens who have won their proceedings, or those who have never been subject to removal in the first place, would have an interest in filing motions to reopen.

Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.").

Moreover, the special rule for battered spouses does contain an explicit geographic limitation. That subsection, among other requirements, expressly requires that "the alien is physically present in the United States at the time of filing the motion." 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV). This provision shows that Congress knew how to impose a geographic restriction when it wanted to, and further suggests that the statute's general provisions do not contain such a limitation. See Lin, 681 F.3d at 1240 ("[W]e can draw the negative inference that 'Congress knew how to include a requirement of physical presence when it wished to do so,' and intentionally chose not to require such presence for a motion to reopen, except in the specified circumstances." (quoting William, 499 F.3d at 333)).

The government's arguments amount to nothing less than a request to write words into the statute that are not there. Essentially, the contention is that we should revise the text of 8 U.S.C. § 1229a(c)(7)(A) to say that "[a]n alien may file one motion to reopen proceedings under this section, excepting other limitations that the Attorney General may prescribe." The consequence of the government's arguments is not limited to the post-departure bar. Under its theory, the government possesses the discretion to impose other substantive limitations on a

-14-

noncitizen's right to file a motion to reopen that lack any foundation in the statutory language.  We decline to adopt such a construction.

**2. The Regulation's History as the Source of the Statute's Ambiguity**

The government's primary defense of the regulation does not focus on the statutory text.  Instead, the government constructs a narrative of the post-departure bar's long history and contends that, when read in light of this history, the motion to reopen statute is merely silent, and thus ambiguous, as to geographic restrictions.[5]

**a. The History of the Motion to Reopen Proceeding and the Post-Departure Bar**

The proceeding we now know as the motion to reopen appeared as a form of relief in early twentieth century cases. See, e.g., Ex Parte Chan Shee, 236 F. 579 (N.D. Cal. 1916). In 1941, the Attorney General (through the Immigration and Naturalization Service), included it in the federal regulations.  See New Regulations Governing the Arrest and Deportation of Aliens, 6 Fed. Reg. 68, 71-72 (Jan. 4, 1941).  A motion to reopen was treated "'as

---

[5] The government cites language from Pena-Muriel that characterized Congress as "remain[ing] silent regarding the long-standing regulatory bar imposed by [the post-departure regulation]."  489 F.3d at 442.  As we stated earlier in the opinion, however,"[t]he parties point[ed] to no statutory language that explicitly addresses the issue" in Pena-Muriel.  Id. at 441. Any comment as to Congressional "silence" we made in our prior opinion was addressed only to the arguments before us at the time.

a matter for the exercise of [the government's] discretion,'" and "judicial interference was deemed unwarranted." Dada, 554 U.S. at 12-13 (quoting Wong Shong Been v. Proctor, 79 F.2d 881, 883 (9th Cir. 1935)).  For a long time, neither the statute nor the Attorney General's regulations prescribed time limits on the filing of the motion.  Id. at 13.

In 1990, Congress became concerned that noncitizens were abusing the procedure by filing motion after motion in order to prolong their time in the United States.  Id.  The legislature therefore directed the Attorney General to issue regulations limiting the time period for the filing of motions to reopen, as well as restrictions on the number of motions that could be filed. Id.  Although the Attorney General investigated the issue and found little evidence of abuse, the Department of Justice issued a regulation imposing new time limits and restrictions on filings. Id. (citing Executive Office for Immigration Review; Motions and Appeals in Immigration Proceedings, 61 Fed. Reg. 18900, 18901, 18905 (1996)).  This new regulation imposed a ninety-day time limit, and restricted noncitizens to the filing of a single motion. Id.

In 1996, Congress passed IIRIRA, which altered numerous aspects of the immigration statute.  One of these changes was the codification of the motion to reopen statute.  Id. at 14.  In doing so, "Congress adopted the recommendations of the DOJ with respect

-16-

to numerical and time limits," id., and clarified the procedure's evidentiary requirements, see 8 U.S.C. § 1229a(c)(7)(B). The amendment to the statute did not similarly adopt the post-departure bar.

In light of the history of Congress's interventions in this field, the government contends that the "emphasis" of IIRIRA's codification of the motion to reopen statute was the time and number limitations enacted by the Attorney General via the 1990 regulations. According to this line of reasoning, the statute is merely "silent" regarding the applicability of the post-departure bar, permitting the executive branch to "fill the gap" by prescribing geographic limitations on "a[n] alien['s]" statutory right to file a motion to reopen. In other words, the government says that adopting petitioner's argument would require us to find that the post-departure bar was "impliedly repealed" by IIRIRA, notwithstanding the long history of the regulation and the lack of any express statutory repeal.

**b. Analysis**

The government's interpretive approach is a peculiar way to construe a statute. We have repeatedly observed that the Chevron analysis begins with the statute's words. See, e.g., Saysana, 590 F.3d at 13; Succar, 394 F.3d at 22-23. Starting instead with an exposition of the legislative and regulatory history is inappropriate in this case. Although history can

-17-

illuminate ambiguous language in some circumstances, relying so heavily on extra-statutory sources to read silence or ambiguity into seemingly clear text runs counter to well-settled modes of interpretation.

The government's proposed methodology also carries certain dangers. As the Third Circuit has pointed out, this method "manufactures an ambiguity from Congress' failure to specifically foreclose each exception that could possibly be conjured or imagined. That approach would create an 'ambiguity' in almost all statutes, necessitating deference to nearly all agency determinations." Prestol Espinal, 653 F.3d at 220.

Moreover, the government would place upon Congress, when enacting a new statute against a background regulatory scheme, the burden of addressing each and every regulation that existed before and expressly stating whether it survives the change in the statute. That argument is untenable. As the Tenth Circuit explained, "[t]o require an express repeal of a discretionary regulation in this context would upend the fundamental principle that regulations should interpret statutes and not the other way around." Contreras-Bocanegra v. Holder, 678 F.3d 811, 818 (10th Cir. 2012). Instead, "when faced with [] a legislative overhaul,

agencies should recalibrate their regulations to ensure they maintain a statutory basis."[6]  Id.

     To be sure, the Supreme Court has sometimes required clearer statements of Congressional intent depending on the circumstances.  To that end, the government relies heavily on Commodity Futures Trading Commission v. Schor, 478 U.S. 833 (1986), for the proposition that "when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress."  Id. at 846 (citation omitted) (internal quotation marks omitted).

     Leaving aside any concerns we may have about the reach of this language, the principle articulated in Schor does not apply to this case.  Until Congress codified the motion to reopen, the proceeding was a regulatory creation, rather than a statutory one. In codifying the right, the legislature "transform[ed] the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien."  Dada, 554 U.S. at 14.  This

---

[6] The government may be in the process of reconsidering its position, however.  In response to a petition for rulemaking, the Attorney General has announced "plans to initiate a separate rulemaking proceeding to address the regulatory provision known as the 'departure bar.'"  77 Fed. Reg. 59567, 59568 (Sept. 28, 2012). The status of these proceedings is unclear and their outcome is uncertain.  Thus, neither the parties nor amici assert that these proceedings moot this petition.

transformation took a significant degree of discretion out of the agency's hands and vested a statutory right in the noncitizen.  See Coyt v. Holder, 593 F.3d 902, 906 (9th Cir. 2010) ("Congress amended the Immigration and Nationality Act [] by, among other things, granting aliens subject to a removal order the right to file one motion to reopen."); cf. Pruidze, 632 F.3d at 237-38 (characterizing statute as an "empowering, not a divesting, provision, as it grants the Board authority to entertain a motion to reopen").  And Congress, by elevating the motion to reopen to a statutory right and carefully delineating its contours, instituted a "pertinent change" to any regulatory roadblock to the exercise of this newly-created right.  Cf. Prestol Espinal, 653 F.3d at 222 n.9 ("Congress' nuanced consideration of which limitations and regulations to codify offers stronger evidence of Congress' intent than does Congress' alleged 'silence' with respect to the pre-existing post-departure regulation.").  In other words, the statutory changes are inconsistent with the notion that Congress simply intended to stay silent regarding so substantial a limitation on the motion to reopen proceeding as the post-departure bar.

This is all the more true given the clarity of the statutory language.  See id. ("'[W]here the law is plain, subsequent reenactment does not constitute an adoption of the previous administrative construction.'" (quoting Brown v. Gardner,

513 U.S. 115, 121 (1994))); see also Brown, 513 U.S. at 121 ("[C]ongressional silence lacks persuasive significance, particularly where administrative regulations are inconsistent with the controlling statute." (citations omitted) (internal quotation marks omitted)). Here, Congress's intent is manifest, and we decline to inject ambiguity into words that do not allow it.

Indeed, the facts of Perez Santana's own case highlight the folly that results from the government's attempts to conjure ambiguity from the statute's plain meaning and coherent structure. As noted, the motion to reopen statute allows the filing of a single motion to reopen within ninety days after the final order of removal. 8 U.S.C. § 1229a(c)(7)(C). Not coincidentally, IIRIRA added a provision that "requires the Attorney General to effectuate physical removal of petitioners subject to a final order of removal within ninety days of the order." Coyt, 593 F.3d at 907 (citing 8 U.S.C. § 1231(a)(1)(A)). The post-departure bar places those statutory provisions in tension with one another by demanding the removal of noncitizens on or before the ninety-day clock on their ability to seek reopening has run. See Contreras-Bocanegra, 678 F.3d at 817 ("If we were to uphold the regulation, the Department of Homeland Security would be permitted . . . to unilaterally cut short the congressionally mandated filing period in almost every

-21-

case."). If the post-departure regulation no longer bars the consideration of a motion to reopen, this tension disappears.[7]

As the Supreme Court has admonished, we should not "adopt[] a construction of [the statute] which would, with respect to an entire class of aliens, completely nullify a procedure so intrinsic a part of the legislative scheme." Dada, 554 U.S. at 18-19 (second alteration in original) (quoting Costello v. INS, 376 U.S. 120 127-28 (1964)). Here, Perez Santana's order of removal became final on April 16, 2012, when the BIA dismissed his direct appeal. Thereafter, he diligently pursued post-conviction relief before the Massachusetts courts. A mere two days after obtaining vacatur of his plea, he sought reopening before the BIA and asserted that the conviction that served as the basis of his removal had been deemed unconstitutional. This motion was filed eighty-eight days after his order of removal became final, and two days before the ninety-day deadline to seek reopening.

_____

[7] In Pena-Muriel, the government similarly relied on Schor to argue that Congress's "silence" as respects the post-departure bar should be construed as implicit endorsement of the regulation. 489 F.3d at 442-43. We addressed this contention in the course of analyzing the reasonableness of the government's interpretation under the second step of Chevron. While acknowledging that Schor provided some support for the agency's exercise of discretion, we cautioned that the "[t]he government's insistence that the Attorney General's interpretation was the one intended by Congress may be overreaching." Id. at 443. Now that we have had a full opportunity to view the regulation in light of the overall statutory scheme, we confirm that the government's statutory argument was indeed incorrect.

-22-

In other words, Perez Santana did everything right — he assiduously sought and obtained what relief he could before the state courts, and timely requested that his proceedings be reopened. Unfortunately, his diligence was rendered useless due to the government's exercise of its wholly discretionary authority to remove him from the United States. More fundamentally, that unilateral action precluded him from vindicating the right Congress granted him. See Reyes-Torres, 645 F.3d at 1077 (observing that petitioner had been "forcibly removed seven days after the final order of removal was entered," and rejecting contention that government "ha[s] the power to unilaterally reduce the time in which Reyes-Torres could have filed his motion to reopen from the statutorily mandated ninety days to seven days").

Recognizing the peculiarity of its position, the government suggests that a noncitizen can apply to the BIA for a stay of removal, which would theoretically allow the noncitizen enough time to seek reopening. Yet the government characterizes the BIA's ability to grant or deny a stay as discretionary. If that is true, then conditioning a statutory right on the government's grace may be a less improper deviation from the statute, but it is an improper one nonetheless. See Contreras-Bocanegra, 678 F.3d at 819 ("[W]e will not condition an absolute statutory right on the vagaries of administrative discretion.").

-23-

Once again, the facts of Perez Santana's case are illustrative. Hoping to stave off removal until the state courts resolved his motion to vacate his criminal conviction, he unsuccessfully asked DHS to stay its hand.[8] The theoretical possibility of delaying his removal was certainly of little aid to Perez Santana, who was summarily shipped off to the Dominican Republic before he could put his arguments before the BIA. Here, too, Perez Santana did what the agency recommended and allowed, to no avail. These facts underscore the error in the government's position, which would preclude Perez Santana from invoking an "intrinsic [] part of the legislative scheme." Dada, 554 U.S. at 19.[9]

---

[8] Stays of removal may be sought from the IJs, the BIA, or DHS. See 8 C.F.R. §§ 1003.2(f), 1003.23(b)(1)(v).

[9] Perez Santana raises an alternative argument, claiming that the post-departure bar constitutes an impermissible contraction of the agency's jurisdiction. This argument focuses on Matter of Armendarez-Mendez, 24 I. & N. Dec. 646. There, the BIA construed the post-departure bar as a limitation on the jurisdiction conferred upon it by the Attorney General and held that "[r]emoved aliens have, by virtue of their departure, literally passed beyond our aid." Id. at 656. Perez Santana responds that the agency cannot contract the jurisdiction conferred upon it by Congress, relying on Union Pacific Railroad v. Board of Locomotive Engineers, 558 U.S. 67, 81-82 (2009).

With our resolution of Perez Santana's statutory argument, there is no need to address the agency's view of its "jurisdiction." But we share the intuition of several of our sister circuits that the statutory and so-called jurisdictional "inquiries may not be altogether separate." Contreras-Bocanegra, 678 F.3d at 816 (citing Prestol Espinal, 653 F.3d at 218 n.4). Moreover, the Supreme Court's recent opinion in City of Arlington v. F.C.C., 133 S. Ct. 1863 (2013) casts serious doubt on whether Perez Santana's arguments are truly distinguishable. See id. at

In sum, "[t]he government's argument is undermined by the text and structure of the statute as well as related provisions" of the statutory scheme. Taing v. Napolitano, 567 F.3d 19, 26 (1st Cir. 2009). Given our conclusion that the plain meaning of the statute controls, we need not address the reasonableness of the regulation under the second step of Chevron.

## D. The Limitations of Today's Holding

The government asks that if we hold that the post-departure bar conflicts with the motion to reopen statute, we limit such a holding to permit only timely, first motions to reopen filed by noncitizens who have departed the United States. The government observes that Perez Santana's arguments "depend on the premise that [8 U.S.C. § 1229a(c)(7)] confers a statutory right to seek reopening," and argues that "such a right exists only insofar as an applicant complies with the statute's requirements for filing a motion to reopen." Thus, the government suggests, the post-departure bar remains validly applicable to motions filed after ninety days, 8 U.S.C. § 1229a(c)(7)(C)(i), or second or subsequent motions, id. § 1229a(c)(7)(A). Because such motions fall outside the statute, the argument goes, they must be construed as an appeal to the agency's sua sponte and extra-statutory ability to reopen proceedings, which is wholly a creature of agency discretion.

---

1868 ("[T]he distinction between 'jurisdictional' and 'nonjurisdictional' interpretations is a mirage.").

Because the government's arguments have no effect on the outcome of this case, we decline to address them in this opinion.[10] Here, the parties do not dispute that Perez Santana filed his motion within ninety days, that this is his first motion, and that he seeks to avail himself of his statutory right to seek reopening. Accordingly, Perez Santana's appeal may be resolved by our holding that the post-departure bar cannot be used to abrogate a noncitizen's statutory right to file a motion to reopen. We need say no more at this juncture.[11]

## III.

For the reasons stated, we <u>grant</u> the petition for review, <u>vacate</u> the order of the BIA, and <u>remand</u> for further proceedings consistent with this opinion.

**<u>So ordered.</u>**

---

[10] The government raises a similar argument in this appeal's companion case, <u>Bolieiro</u> v. <u>Holder</u>, No. 12-1807, slip op. at 10-11 (1st Cir. Sept. 27, 2013). We decline to address it in that opinion as well, for somewhat different reasons.

[11] We express no view on Perez Santana's reliance on <u>Lin</u> v. <u>Gonzales</u>, 473 F.3d 979 (9th Cir. 2007).