**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JASBIR SINGH TOOR,<br>*Petitioner*,<br><br>v.<br><br>LORETTA E. LYNCH, Attorney General,<br>*Respondent*. | No. 10-73212<br><br>Agency No.<br>A056-361-534<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 4, 2015—Pasadena, California

Filed June 17, 2015

Before: Stephen Reinhardt, N. Randy Smith,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Reinhardt

# SUMMARY[*]

## Immigration

The panel granted Jasbir Singh Toor's petition for review of the Board of Immigration Appeals' decision dismissing his appeal of an Immigration Judge's order denying his motion to reopen or reconsider on the ground that the IJ and BIA lacked jurisdiction under the regulatory departure bars because he voluntarily departed the United States during removal proceedings.

The panel held that two pre-IIRIRA regulations concerning motions to reopen or reconsider made before an IJ (8 C.F.R. § 1003.23(b)(1)) and before the BIA (8 C.F.R. § 1003.2(d)), referred to as the departure bars, are invalid irrespective of the manner in which the noncitizen departed. The panel analyzed the unpublished decision in Toor's case under *Chevron* because it was directly controlled by *Matter of Armendarez-Mendez*, 24 I. & N. Dec. 646 (BIA 2008), which held that the departure bars apply after IIRIRA even though the regulations predated IIRIRA. The panel held that the text of IIRIRA made clear that the statutory right to file a motion to reopen or reconsider is not limited by whether the individual had departed, and that the bar is invalid irrespective of how the noncitizen departed the United States.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Marie L. Kayal (argued), The Law Office of Marie L. Kayal, Burlingame, California, for Petitioner.

Ann C. Varnon (argued), Trial Attorney; Tony West, Assistant Attorney General; Cindy S. Ferrier, Assistant Director; and Sunah Lee, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.

**OPINION**

REINHARDT, Circuit Judge:

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), which *inter alia* provides all noncitizens a statutory guarantee that they may file "one motion to reconsider a decision that the alien is removable from the United States," 8 U.S.C. § 1229a(c)(6)(A), and "one motion to reopen proceedings," 8 U.S.C. § 1229a(c)(7)(A). *See Dada v. Mukasey*, 554 U.S. 1, 14 (2008) ("[T]he statutory text is plain insofar as it guarantees to each alien the right to file 'one motion to reopen proceedings under this section.'" (citation omitted)). That guarantee was limited in some ways — with number, content, and time restrictions — but not in any respect by whether the noncitizen had departed the United States prior to filing such motions.

Two regulations that predate the passage of IIRIRA — hereinafter referred to as the regulatory departure bar — provide that a noncitizen who is the subject of immigration

proceedings may not make a motion to reopen or reconsider "subsequent to his or her departure from the United States." *See* 8 C.F.R. § 1003.23(b)(1) (concerning motions to reopen or reconsider made before an Immigration Judge); 8 C.F.R. § 1003.2(d) (concerning motion to reopen or reconsider made before the Board of Immigration Appeals (BIA)). In *Matter of Armendarez-Mendez*, 24 I & N Dec. 646, 660 (BIA 2008), the BIA held that the regulatory departure bar survives the passage of IIRIRA. Here, we consider whether the BIA was correct, or whether the regulatory departure bar conflicts with IIRIRA's statutory guarantee that noncitizens may file one motion to reopen and one motion to reconsider irrespective of whether they previously departed the United States.

This is not the first time we have examined the regulatory departure bar. As a matter of regulatory interpretation, we have held that the departure bar does not apply to noncitizens who departed the United States either before removal proceedings have commenced, *see Singh v. Gonzales*, 412 F.3d 1117 (9th Cir. 2005), or after removal proceedings were completed, *see Lin v. Gonzales*, 473 F.3d 979 (9th Cir. 2007). In considering the relationship between the regulatory departure bar and IIRIRA, we have held that the regulatory departure bar is invalid as applied to a noncitizen who is involuntarily removed from the United States. *See Reyes-Torres v. Holder*, 645 F.3d 1073 (9th Cir. 2011); *Coyt v. Holder*, 593 F.3d 902 (9th Cir. 2010).

We have not, however, addressed whether the regulatory departure bar may be validly applied to a noncitizen who voluntarily departs the United States during removal proceedings. Although we have never upheld the invocation of the regulatory departure bar in a precedential decision, we have reserved that question. *See Coyt*, 593 F.3d at 907 n.3

("Other circuits have considered whether 8 C.F.R. § 1003.2(d) and 8 C.F.R. § 1003.23(b)(1) . . . can be applied to *any* removal — voluntary or involuntary — a question we need not, and do not, reach in this case."); *Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102, 1106 n.2 (9th Cir. 2006). Now, we address the question, and consistent with every other circuit that has addressed it, we hold the regulatory departure bar invalid irrespective of how the noncitizen departed the United States.[1]

---

[1] The other circuit courts that have addressed this issue have approached it in two ways. The First, Third, Fourth, Fifth, Tenth, and Eleventh Circuits have held that the regulatory departure bar clearly conflicts with IIRIRA, and therefore fails at step one of *Chevron*. *See Santana v. Holder*, 731 F.3d 50 (1st Cir. 2013); *Prestol Espinal v. Atty. Gen.*, 653 F.3d 213 (3d Cir. 2011); *William v. Gonzales*, 499 F.3d 329 (4th Cir. 2007); *Garcia-Carias v. Holder*, 697 F.3d 257 (5th Cir. 2012); *Contreras-Bocanegra v. Holder*, 678 F.3d 811 (10th Cir. 2012) (en banc); *Lin v. U.S. Atty. Gen.*, 681 F.3d 1236 (11th Cir. 2012). The Second, Sixth, and Seventh Circuits have held that the BIA's application of the regulatory departure bar as a jurisdictional rule is an impermissible contraction of its own jurisdiction. *See Luna v. Holder*, 637 F.3d 85 (2d Cir. 2011); *Pruidze v. Holder*, 632 F.3d 234 (6th Cir. 2011); *Marin-Rodriguez v. Holder*, 612 F.3d 591 (7th Cir. 2010). Although the two rationales "may not be altogether separate," *Contreras-Bocanegra*, 678 F.3d at 816, we need not and do not opine on the rationale adopted by the Second, Sixth, and Seventh Circuits because we resolve the case as a matter of statutory interpretation. (The Eighth Circuit has not yet decided the validity of the regulatory departure bar. *See Ortega-Marroquin v. Holder*, 640 F.3d 814, 820 (8th Cir. 2011).)

Some circuit courts have upheld the validity of the regulatory departure bar when applied to motions to reopen or to reconsider filed untimely, and thus out of compliance with IIRIRA. *See Zhang v. Holder*, 617 F.3d 650, 660–65 (2d Cir. 2010); *Ovalles v. Holder*, 577 F.3d 288, 295–96 (5th Cir. 2009); *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 676 (5th Cir. 2003). Because Petitioner's motion was timely and, it appears,

## I.

Jasbir Singh Toor (Petitioner), a native and citizen of India, was admitted to the United States as a lawful permanent resident on a conditional basis in 2003. In 2005, the former Immigration and Naturalization Service (INS) approved his petition to remove the conditions on his residence. On August 23, 2007, the Department of Homeland Security (DHS) initiated removal proceedings against Petitioner, charging that he was removable for fraudulently or willfully misrepresenting a material fact on a visa petition in violation of INA § 212(a)(6)(C)(I), and for lacking a valid entry document at the time of his application for admission in violation of INA § 212(a)(7)(A)(i)(I). On November 3, 2008, an Immigration Judge (IJ) sustained both charges of removability. Two days later, the IJ granted Petitioner until December 19, 2008, to apply for all forms of relief from removal. Petitioner did not do so, and on February 3, 2009, the IJ considered all requests for relief waived and abandoned, and ordered Petitioner removed to India.

Petitioner filed a timely motion to reopen or reconsider his removal proceedings, in which he argued that the IJ could not validly order him removed to India because Petitioner had already "departed the United States and arrived in India on April 3, 2008" before the IJ ordered him removed. The IJ denied Petitioner's motion, holding that, pursuant to 8 C.F.R. § 1003.23(b)(1) — the regulatory departure bar applicable to proceedings before an Immigration Judge — the IJ had no jurisdiction to entertain Petitioner's motion to reopen or reconsider because Petitioner had "*voluntarily* left the United

otherwise in compliance with IIRIRA, we need not and do not address that issue in this case. *See* note 7, *infra*.

States while his removal proceedings were pending."**²**  The BIA dismissed Petitioner's appeal.  Like the IJ, the BIA explained that it had no jurisdiction to consider Petitioner's motion because the regulatory departure bar — located for the BIA at 8 C.F.R. § 1003.2(d) — precludes a noncitizen from moving the BIA to reopen or reconsider his removal proceedings subsequent to his departure from the United States, and Petitioner had "self-deported from the United States during the pendency of administrative proceedings."  The instant petition for review followed.

## II.

We have jurisdiction to review questions of law presented in a petition for review.  8 U.S.C. § 1252(a)(2)(D).  "We review the BIA's denial of motions to reopen or to reconsider for abuse of discretion, 'although [de novo] review applies to the BIA's determination of purely legal questions.'" *Cano-Merida v. I.N.S.*, 311 F.3d 960, 964 (9th Cir. 2002) (quoting *Mejia v. Ashcroft*, 298 F.3d 873, 876 (9th Cir. 2002)).  The subject of this appeal — the validity of the regulatory departure bar — presents a purely legal question of statutory interpretation to which we apply de novo review, "giving appropriate deference to the agency if warranted." *Arteaga-De Alvarez v. Holder*, 704 F.3d 730, 735 (9th Cir. 2012).

---

**²** The IJ also held that even if it had jurisdiction to consider Petitioner's motion, the motion would fail on the merits.  The BIA, however, did not reach the merits of Petitioner's motion, and it is not, therefore, a subject of this appeal.  Indeed, the government concedes that we cannot affirm the BIA on the merits alone, but rather must "remand the case to the Board for further proceedings on the merits of the motion" if we reverse the BIA's jurisdictional holding.

**III.**

Separate sections in the Federal Register provide essentially an identical limitation on motions to reopen or to reconsider filed before an IJ, on the one hand, and the BIA, on the other. The regulation pertaining to motions to reopen or to reconsider made before an IJ states, in relevant part:

> A motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States.

8 C.F.R. § 1003.23(b)(1). The regulation pertaining to motions to reopen or to reconsider made before the BIA states:

> A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States.

8 C.F.R. § 1003.2(d). These regulations compose the regulatory departure bar. In this case, the IJ and the BIA refused to exercise jurisdiction over Petitioner's motion to reopen and reconsider because he had voluntarily departed the United States during his immigration proceedings, and therefore was barred by the regulatory departure bar from making a motion to reopen or to reconsider.

Petitioner argues that the regulatory departure bar conflicts with the statutory right to file a motion to reopen

and a motion to reconsider provided in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). In *Matter of Armendarez-Mendez*, 24 I & N Dec. 646, 660 (BIA 2008), the BIA held that the regulatory departure bar, which predated the passage of IIRIRA, "remains in full effect" after IIRIRA. The BIA explained that it saw "nothing in the language or legislative history of . . . IIRIRA that would lead [it] to conclude that [IIRIRA] was intended to override the existing regulatory scheme governing the filing and adjudication of motions in removal proceedings." *Id.* at 657.

"We apply *Chevron* deference to the Board's interpretations of ambiguous immigration statutes, if the Board's decision is a published decision" or an unpublished decision "directly controlled by [a] published decision." *Guevara v. Holder*, 649 F.3d 1086, 1089–90 (9th Cir. 2011) (quoting *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010)) (internal quotation marks omitted). In this case, the BIA issued an unpublished decision, but it was directly controlled by *Matter of Armendarez-Mendez*, a published decision. Therefore, we apply *Chevron* deference. Under *Chevron*, we first ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter . . . ." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

Here, we hold that Congress has directly spoken to the precise question at issue; the text of IIRIRA makes clear that the statutory right to file a motion to reopen and a motion to

reconsider is *not* limited by whether the individual has departed the United States.[3]  The regulatory departure bar, therefore, fails at the first step of *Chevron*.  In so holding, we join every circuit that has resolved this issue under *Chevron*. *See Santana v. Holder*, 731 F.3d 50, 61 (1st Cir. 2013); *Prestol Espinal v. Atty. Gen.*, 653 F.3d 213, 218 (3d Cir. 2011); *William v. Gonzales*, 499 F.3d 329, 334 (4th Cir. 2007); *Garcia-Carias v. Holder*, 697 F.3d 257, 264 (5th Cir. 2012); *Contreras-Bocanegra v. Holder*, 678 F.3d 811, 819 (10th Cir. 2012) (en banc); *Lin v. U.S. Atty. Gen.*, 681 F.3d 1236, 1241 (11th Cir. 2012).  We recognize that the Second, Sixth, and Seventh Circuits have held that the regulatory departure bar is an impermissible contraction of the BIA's jurisdiction.  *See Luna v. Holder*, 637 F.3d 85 (2d Cir. 2011); *Pruidze v. Holder*, 632 F.3d 234 (6th Cir. 2011); *Marin-Rodriguez v. Holder*, 612 F.3d 591 (7th Cir. 2010). Without necessarily disagreeing with those courts, we choose

---

[3] Our decision is in no way inconsistent with *Singh v. Gonzales*, 412 F.3d 1117 (9th Cir. 2005), or *Lin v. Gonzales*, 473 F.3d 979 (9th Cir. 2007).  In those cases, we simply interpreted the text of the regulatory departure bar and held that as written the bar applies only to noncitizens who depart the United States *during* removal proceedings — not before or after.  In both cases, we held that the regulatory departure bar could *not* be applied to the petitioners before us because they did not depart *during* removal proceedings.  In neither case did we uphold the application of the regulatory departure bar.  We were not asked to resolve nor did we resolve the precise issue before us now — whether the regulatory departure bar was overruled by IIRIRA.  *Singh* and *Lin*, therefore, were cases exclusively concerned with regulatory interpretation.  We acknowledged that fact in *Coyt v. Holder*, 593 F.3d 902 (9th Cir. 2010) — the first case in which we addressed the relationship between IIRIRA and the regulatory departure bar — when we reserved the very question that we answer in this case: whether the regulatory departure bar "can be applied to *any* removal — voluntary or involuntary."  *Coyt*, 593 F.3d at 907 n.3.  We could not have done so if that question had already been resolved by *Singh* and *Lin*.

to resolve this case under *Chevron* because that is the approach taken by six of the nine circuits to have considered the question, and the one that our cases in this area of the law have taken. *See Reyes-Torres v. Holder*, 645 F.3d 1073, 1076 (9th Cir. 2011); *Coyt v. Holder*, 593 F.3d 902, 905 (9th Cir. 2010).

Our inquiry "begins with the statutory text, and ends there as well," because the text is "clear and unambiguous." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (quoting *McDonald v. Sun Oil Co.*, 538 F.3d 774, 780 (9th Cir. 2008) (internal quotation marks omitted)). IIRIRA states *inter alia* that an "alien may file one motion to reconsider a decision that the alien is removable from the United States," 8 U.S.C. § 1229a(c)(6)(A), and that an "alien may file one motion to reopen proceedings under this section," 8 U.S.C. § 1229a(c)(7)(A). The statute does not limit these rights to "aliens who have not departed the United States during their immigration proceedings," as the regulatory departure bar would require. The statutory rights are, instead, guaranteed to each "alien." The regulatory departure bar conflicts with this clear statutory command. *See Dada*, 554 U.S. at 15 ("The statutory text is plain insofar as it guarantees to each alien the right to file 'one motion to reopen proceedings under this section.'" (citation omitted)); *Santana*, 731 F.3d at 56 ("[T]he provision unambiguously confers upon 'an alien' the authority and the right to file a motion to reopen, in language that admits of no exceptions."); *William*, 499 F.3d at 332 ("Because the statute sweeps broadly in this reference to 'an alien,' it need be no more specific to encompass within its terms those aliens who are abroad."); *Garcia-Carias*, 697 F.3d at 263 ("By its clear terms, the statute does not distinguish between those aliens who are abroad and those who remain in the United States —

the unmodified 'alien' captures both."); *Contreras-Bocanegra*, 678 F.3d at 816 ("The language does not distinguish between noncitizens abroad and those in the United States.").

Placing these statutory rights in their proper context confirms that IIRIRA invalidated the regulatory departure bar. IIRIRA limits the right to file a motion to reopen and a motion to reconsider by number, time, and content, but not in any respect by whether the individual has departed the United States. Specifically, the statute provides that a noncitizen may file "one" motion to reconsider, 8 U.S.C. § 1229a(c)(6)(A), it "must be filed within 30 days of the date of entry of a final administrative order of removal," *id.* § 1229a(c)(6)(B), and it "shall specify the errors of law or fact in the previous order and shall be supported by pertinent authority," *id.* § 1229a(c)(6)(C). Similarly, unless the statute's exception for victims of domestic violence applies, a noncitizen is limited to "one" motion to reopen, *id.* § 1229a(c)(7)(A), which must "be filed within 90 days of the date of entry of a final administrative order," *id.* § 1229a(c)(7)(C)(i), and "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material," *id.* § 1229a(c)(7)(B). In contrast, the statute does not contain any requirement that the noncitizen filing a motion to reconsider or a motion to reopen remain physically present in the United States during the immigration proceedings. Indeed, it contains no departure-related restriction of any kind.

"When Congress provides exceptions in a statute, . . . [t]he proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the

ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000). As the Tenth Circuit explained, "[t]his principle is particularly pertinent in the IIRIRA context, given that Congress was undoubtedly aware of the pre-existing regulatory post-departure bar." *Contreras-Bocanegra*, 678 F.3d at 817. Applied here, therefore, the "proper inference" is that Congress considered whether to bar motions to reopen or to reconsider from noncitizens who had departed the United States, and chose not to do so. The statute contains several exceptions to the general grant of a right to file a motion to reopen and a motion to reconsider, but does not contain any related to whether the noncitizen previously departed the United States. The regulatory departure bar unambiguously conflicts with this decision by Congress. *See Garcias-Carias*, 697 F.3d at 264 ("The fact that Congress created limitations on the exercise of the motion to reopen, yet did not place a geographic restriction, supports a reading . . . that does not deny departed aliens their right to file a motion to reopen."); *Lin*, 681 F.3d at 1240 ("Congress clearly considered and included some restrictions on the ability to file a motion to reopen but chose not to make a limitation based on the alien's physical location.").

Moreover, subsequent enactments by Congress further demonstrate that it knew how to include a physical-presence requirement on motions to reopen, yet did not do so for all noncitizens who make such a motion — contrary to the regulatory departure bar, which applies to all noncitizens. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to

the topic at hand."). With changes enacted in 2000[4] and 2006,[5] Congress provided that the number and time limitations on filing a motion to reopen do not apply to battered spouses, children, and parents, 8 U.S.C. § 1229a(c)(7)(C)(iv), as long as such individuals are "physically present in the United States at the time of filing the motion," *id.* § 1229a(c)(7)(C)(iv)(IV). No other physical-presence requirement exists in the statute governing motions to reopen and motions to reconsider.

The addition of a physical-presence requirement confirms that the omission of a departure bar from the statute governing motions to reopen and motions to reconsider was deliberate. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted) (internal quotation marks omitted). Here, Congress included a physical-presence requirement in the section of the statute concerning tardy or successive motions to reopen filed by battered spouses, children, and parents, but did not include any presence-related requirements elsewhere in the statute. Therefore, we must presume that Congress intentionally excluded a presence-related requirement from its general grant of a statutory right to file a motion to reopen and a motion to reconsider. *See Santana*, 731 F.3d at 56

---

[4] *See* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 1506(c), 114 Stat. 1464, 1528 (2000).

[5] *See* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 825(a)(2)(F), 119 Stat. 2960, 3063–64 (2006).

("This provision shows that Congress knew how to impose a geographic restriction when it wanted to, and further suggests that the statute's general provisions do not contain such a limitation."); *Lin*, 681 F.3d at 1240 (explaining that the physical-presence requirement included in the statute leads to an inference that Congress "intentionally chose not to require such presence for a motion to reopen, except in the specified circumstances.").

Moreover, Congress must have understood that IIRIRA invalidated the regulatory departure bar. As the Third Circuit explained, there would have been "no need" for Congress in its enactments subsequent to IIRIRA to provide a physical-presence requirement for victims of domestic violence filing motions to reopen if IIRIRA had left the regulatory departure bar undisturbed. *Prestol Espinal*, 633 F.3d at 223. In fact, the argument to the contrary — that the regulatory departure bar survived IIRIRA, yet Congress nevertheless provided the physical-presence requirement for victims of domestic violence filing late or successive motions to reopen — would require us to read the latter provision as mere surplusage, in direct violation of the "fundamental canon of statutory construction that a statute should not be construed so as to render any of its provisions mere surplusage." *United States v. Wenner*, 351 F.3d 969, 975 (9th Cir. 2003); *see also William*, 499 F.3d at 333 ("We can go beyond simply drawing an inference regarding Congress' intent in this case, for a finding that physical presence in the United States is required before *any* motion to reopen may be filed would render the physical presence requirement expressly written into subsection (c)(7)(C)(iv)(IV) mere surplusage."); *Garcias-Carias*, 697 F.3d at 264 ("[A]n interpretation of the statute that would impose a general physical presence requirement would effectively read the aforementioned

provision regarding domestic abuse victims out of the statute.").

In sum, our conventional tools of statutory interpretation yield one conclusion, and one conclusion alone — the regulatory departure bar has been invalidated by Congress. However, notwithstanding the complete lack of statutory authority for the regulatory departure bar and the compelling statutory evidence that Congress legislated to the contrary, the government argues that the regulatory departure bar may, at least in the case of a voluntary departure, nevertheless apply for two reasons, both of which we reject.

First, the government argues that because the regulatory departure bar predated IIRIRA and IIRIRA did not explicitly overturn it, Congress chose not to disturb the pre-existing regulatory departure bar. The basic story, in the government's view, is the following: In 1990, Congress directed the Attorney General to "issue regulations with respect to . . . the period of time in which motions to reopen and to reconsider may be offered in deportation proceedings, which regulations include a limitation on the number of such motions that may be filed and a maximum time period for the filing of such motions." Immigration Act of 1990, Pub. L. No. 101-649, § 545(d), 104 Stat. 4978, 5066. In April 1996, the Attorney General promulgated time and number limitations as instructed, while also reaffirming the regulatory departure bar. *See* Motions and Appeals in Immigration Proceedings, 61 Fed. Reg. 18,900, 18,905 (Apr. 29, 1996). Later that year, Congress enacted IIRIRA, which codified the time and number limitations that the Attorney General had promulgated, and — according to the government — "did not displace or otherwise disturb the post-departure bar." As a

result, the government claims, the regulatory departure bar remains valid after IIRIRA.

The government's argument, however, merely begs the question — did IIRIRA, in fact, not "displace or otherwise disturb" the regulatory departure bar? Based on the conventional tools of statutory interpretation as applied above, the answer is "no." Our precedent confirms this answer. In both *Coyt v. Holder*, 593 F.3d 902 (9th Cir. 2010), and *Reyes-Torres v. Holder*, 645 F.3d 1073 (9th Cir. 2011), we held that IIRIRA invalidated the regulatory departure bar as applied to involuntary departures. Therefore, we have already held that IIRIRA "displace[d] or otherwise disturb[ed]" the regulatory departure bar. In short, we have already rejected the premise of the government's argument.[6]

The government's contention is not only unpersuasive, but would create troubling precedent. In short,

> the government would place upon Congress, when enacting a new statute against a background regulatory scheme, the burden of addressing each and every regulation that existed before and expressly stating whether it survives the change in the statute. That argument is untenable. As the Tenth Circuit

---

[6] Petitioner argues in part that our decisions in *Coyt* and *Reyes-Torres* themselves resolve his case. We do not agree. Those decisions held that IIRIRA was incompatible with the regulatory departure bar as applied to involuntary removals. In this case, by contrast, Petitioner departed the United States voluntarily. Indeed, as we have said, *Coyt* reserved the very question at issue in this case: whether the regulatory departure bar "can be applied to *any* removal — voluntary or involuntary." *Coyt*, 593 F.3d at 907 n.3.

explained, "[t]o require an express repeal of a discretionary regulation in this context would upend the fundamental principle that regulations should interpret statutes and not the other way around."

*Santana*, 731 F.3d at 58 (quoting *Contreras-Bocanegra*, 678 F.3d at 818) (footnote omitted).

Moreover, far from demonstrating that Congress chose to leave intact the regulatory departure bar, the story presented by the government more strongly suggests that Congress deliberately invalidated it. The government acknowledges that IIRIRA codified some regulatory limitations in existence at the time, yet did not codify the regulatory departure bar. The correct inference from this fact is that Congress made a "considered judgment" as to which regulatory limitations would be integrated into the statutory scheme governing motions to reopen and motions to reconsider, and the departure bar was not one of them. *See Prestol Espinal*, 653 F.3d at 222 ("Congress did not codify the post-departure bar notwithstanding its long history. Neither we nor the agency should be permitted to override Congress' considered judgment.").

Second, the government argues that "[t]he decision to bar aliens who have left the United States from having their cases reopened or reconsidered represented a categorical exercise of discretion by the Attorney General." To support this argument, the government cites *Lopez v. Davis*, 531 U.S. 230, 244 (2001), which upheld the authority of an agency to make categorical rules in place of case-by-case determinations.

This argument is unpersuasive as well. We have held that "*Lopez* applies only when Congress has not spoken to the precise issue and the statute contains a gap." *Rodriguez v. Smith*, 541 F.3d 1180, 1188 (9th Cir. 2008) (quoting *Wedelstedt v. Wiley*, 477 F.3d 1160, 1168 (10th Cir. 2007) (internal quotation marks omitted)). As explained above, Congress has spoken to the precise issue here by providing a statutory guarantee that all noncitizens may file a motion to reopen and a motion to reconsider and by not limiting that right to noncitizens who have remained in the United States. Moreover, even if *Lopez* applied, this argument would fail because we may affirm the BIA based only on "the explanations offered by the agency," *Arrington v. Daniels*, 516 F.3d 1106, 1113 (9th Cir. 2008); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943), and the BIA has "consistently characterized the [departure bar] regulation as jurisdictional" rather than a "categorical exercise of discretion," *Contreras-Bocanegra*, 678 F.3d at 819.[7]

## IV.

That Petitioner departed the United States voluntarily, rather than involuntarily, is immaterial. The regulatory departure bar is invalid irrespective of the manner in which the movant departed the United States, as it conflicts with clear and unambiguous statutory text. The BIA erred by refusing to exercise jurisdiction over Petitioner's motion to reopen and to reconsider on the basis of the regulatory

---

[7] Because Petitioner's motion to reopen or to reconsider was timely and, it appears, otherwise compliant with IIRIRA, we do not address whether the BIA may validly apply the regulatory departure bar to a motion that does not meet the number, time, and content requirements specified in IIRIRA. *See* note 1, *supra*.

departure bars.  We therefore **GRANT** the petition for review and **REMAND** for further proceedings consistent with this opinion.