**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JAIME BALERIO RUBALCABA,
*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,
*Respondent*.

No. 17-70845

Agency No.
A074-364-452

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 12, 2021
Pasadena, California

Filed June 2, 2021

Before: Danny J. Boggs,[*] Milan D. Smith, Jr., and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Murguia

---

[*] The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted Jaime Balerio Rubalcaba's petition for review of a decision of the Board of Immigration Appeals, vacated the BIA's decision, and remanded, holding that the "departure bar" provision in 8 C.F.R. § 1003.23(b)(1) does not apply in the context of *sua sponte* reopening.

Section 1003.23(b)(1) allows an immigration judge ("IJ") to reopen a case on his or her own motion—*sua sponte* reopening—or pursuant to a motion to reopen filed by either party.  At all times relevant to this case, the provision of 8 C.F.R. § 1003.23 known as the "departure bar" provided: "A motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States."

Rubalcaba was removed from the United States in 1995. In 2016, after his subsequent return, he requested that an IJ reopen his case *sua sponte* to allow him to apply for adjustment of status.  The BIA relied exclusively on the departure bar in affirming the IJ's denial of *sua sponte* reopening.

In the published decision of *Matter of Armendarez-Mendez*, 24 I. & N. Dec. 646 (BIA 2008), the BIA construed the departure bar rule as imposing a limitation on its

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

jurisdiction to entertain motions filed by noncitizens who had departed the United States, and concluded that it applied to *sua sponte* reopening. This court rejected this interpretation in *Toor v. Lynch*, 789 F.3d 1055 (9th Cir. 2015), as applied to *timely* motions for reopening, concluding that the BIA's interpretation impermissibly conflicted with clear and unambiguous statutory language permitting a noncitizen to file one motion to reopen within ninety days of a final order of removal. Because the petitioner's motion to reopen had been timely in *Toor*, the court did not decide whether an untimely motion that relied on *sua sponte* reopening authority would be subject to the departure bar.

The panel joined the Tenth Circuit in holding that the departure bar does not limit an IJ's *sua sponte* reopening authority. Applying the framework for evaluating an agency's interpretation of its own regulations announced in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), the panel concluded that 8 C.F.R. § 1003.23(b)(1) is not "genuinely ambiguous." Rather, the panel concluded that the plain language of the regulation makes clear that the departure bar limits only "motions to reopen," not an IJ's *sua sponte* authority. First, the panel observed that the regulation distinguishes between an IJ's *sua sponte* reopening authority and a noncitizen's ability to file a motion to reopen, and explained that the plain text of the departure bar applies only to a motion to reopen or reconsider and says nothing about *sua sponte* authority. Second, the panel concluded that the structure of 8 C.F.R. § 1003.23(b)(1) confirms the understanding that the departure bar clearly does not apply to *sua sponte* authority. Third, the panel concluded that the history of the regulation reinforced its conclusion. Finally, the panel concluded that its interpretation is consistent with the purpose of the regulation: giving the agency flexibility in truly unusual

cases in which a noncitizen cannot meet the regulatory requirements for a "motion to reopen" but the agency determines that reopening is still justified.

Having concluded that the regulation is not genuinely ambiguous, the panel explained that was the end of its inquiry under *Kisor*, and accordingly, it did not defer to the BIA's contrary interpretation.

The panel recognized that the Second, Third, and Fifth Circuits have reached the opposite conclusion, but noted that these circuits did not have the benefit of *Kisor*. Prior to *Kisor*, courts evaluated an agency's interpretation of its own regulations using the deferential standard set out in *Auer v. Robbins*, 519 U.S. 452 (1997), under which an agency's interpretation was controlling unless plainly erroneous or inconsistent with the regulation. However, as the Tenth Circuit concluded in holding that the departure bar was not genuinely ambiguous, the panel explained that *Kisor* requires the court to "dig deeper" in determining whether a regulation is genuinely ambiguous.

## COUNSEL

Elsa I. Martinez (argued), Law Offices of Elsa Martinez PLC, Culver City, California, for Petitioner.

Sarah Stevens Wilson (argued), Assistant United States Attorney, United States Attorney's Office, Birmingham, Alabama; Eric R. Quick, Trial Attorney; Paul Fiorino, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

MURGUIA, Circuit Judge:

This case requires us to examine the "departure bar" provision in 8 C.F.R. § 1003.23(b)(1) in the context of *sua sponte* reopening. Title 8 C.F.R. § 1003.23 governs the reopening of immigration proceedings before an immigration judge ("IJ"). Section 1003.23(b)(1) allows the IJ to reopen a case on his or her own motion—what is known as *sua sponte* reopening—or pursuant to a motion to reopen filed by either party. 8 C.F.R. § 1003.23(b)(1). Motions to reopen are subject to various procedural limits. *See id.* § 1003.23(b)(1), (3). As relevant here, 8 C.F.R. § 1003.23(b)(1) provides: "A motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States." This provision, which the agency has interpreted to prevent a noncitizen who has departed the United States from reopening his or her removal proceedings, is known as the "departure bar." *See Toor v. Lynch*, 789 F.3d 1055, 1057 (9th Cir. 2015).

Petitioner Filiberto Ruvalcaba, also known as Jaime Balerio Rubalcaba,[1] was placed in exclusion proceedings before an IJ and removed from the country more than twenty years ago. After his departure and his subsequent return to

---

[1] There is some confusion about Petitioner's legal name in the agency proceedings and the record. He gave the name "Jaime Balerio-Rubalcaba" to immigration officials when he was first placed in exclusion proceedings, but he later explained that this was his brother's name. Although "Filiberto Ruvalcaba" is the name Petitioner used in his motion to reopen, we refer to him as "Rubalcaba" throughout this opinion for consistency with the BIA's decision in this case.

the United States, he requested that the IJ reopen his immigration proceedings *sua sponte* to allow him to apply for adjustment of status.  The Board of Immigration Appeals ("BIA") relied exclusively on the departure bar in affirming the IJ's denial of *sua sponte* reopening, stating that the IJ could not reopen Rubalcaba's case because Rubalcaba had previously left the country.  Rubalcaba argues that this was impermissible because an IJ should not be prevented from reopening a noncitizen's case on the IJ's own motion based solely on the noncitizen's departure during or after prior proceedings.

This case presents the question whether the departure bar limits an IJ's ability to reopen immigration proceedings *sua sponte*.  We have jurisdiction to review questions of law under 8 U.S.C. § 1252(a)(2)(D), and we conclude that the departure bar does not apply in the context of *sua sponte* reopening.  That is, an IJ's discretion to reopen a case on his or her own motion is not limited by the fact that a noncitizen has previously been removed or has departed from the United States.  Therefore, we grant the petition for review.

## I.

Rubalcaba, a native and citizen of Mexico, first came to the United States in 1992 when he was fourteen years old.  At some point, Rubalcaba left the United States for Mexico.  In 1995, Rubalcaba was apprehended while attempting to re-enter the United States through the San Ysidro Port of Entry.  Rubalcaba admitted that he was entering the United States without authorization.  The agency then charged with removing individuals, the now-defunct Immigration and Naturalization Service, detained Rubalcaba and placed him in exclusion proceedings.  An IJ determined that he was inadmissible and ordered him excluded and deported on October 31, 1995.  Rubalcaba waived his right to appeal to

the BIA, and the government removed him to Mexico after the conclusion of the proceedings.

Five months later, Rubalcaba re-entered the United States "through the hills in Tijuana." He acknowledges that he was never formally inspected or admitted. He has remained in the United States since 1996.

In 2016, Rubalcaba sought to reopen his proceedings before an IJ. Rubalcaba asked the IJ to exercise her *sua sponte* reopening authority under 8 C.F.R. § 1003.23(b)(1)[2] so that he could apply for adjustment of status based on a visa petition his father had filed on his behalf, which had become current.[3] The IJ denied Rubalcaba's motion for several reasons. The IJ first explained that Rubalcaba's motion to reopen was untimely and that he failed to show due diligence such that he would be entitled to equitable tolling of the ninety-day deadline for filing a motion to reopen. The IJ further determined that Rubalcaba's case did not present an exceptional situation that justified a favorable exercise of discretion. Therefore, the IJ declined to exercise her *sua sponte* reopening authority. In addition, as relevant here, the IJ also determined that she lacked jurisdiction over Rubalcaba's case because Rubalcaba had previously

---

[2] Despite the fact that Rubalcaba himself requested reopening through a motion, this practice has been known as "*sua sponte*" reopening and considered an exercise of the IJ's or BIA's discretion in immigration court practice. *See* 85 Fed. Reg. 81,588, 81,628 (Dec. 16, 2020) (recognizing "that the BIA has, in the past, exercised what it termed 'sua sponte authority' in response to a motion").

[3] Rubalcaba's father became a lawful permanent resident around 1989 and filed a visa petition on Rubalcaba's behalf in 1993. Rubalcaba asserted in his motion to reopen that because he had aged out of the relevant category—unmarried children of lawful permanent residents— he "had to wait over 23 years to seek adjustment of status."

departed the United States in 1995.  According to the IJ, "the departure bar under 8 C.F.R. § 1003.23(b)(1), prevent[ed] [Rubalcaba] from filing this untimely motion on an executed final administrative order of exclusion."  In other words, the IJ determined she could not consider reopening Rubalcaba's case because Rubalcaba had previously left the country.

Rubalcaba appealed to the BIA.  The BIA dismissed Rubalcaba's appeal, relying solely on the departure bar.  The BIA explained that "[t]he Immigration Judge correctly found that reopening based on [Rubalcaba's] untimely motion, as well as reopening sua sponte, was barred because [Rubalcaba] had departed the United States."  Therefore, the BIA determined that it did not need to address the IJ's alternative reasons for refusing to reopen Rubalcaba's proceedings, including the lack of an "exceptional situation" justifying reopening.  Rubalcaba timely petitioned for review.

## II.

When the BIA denies *sua sponte* reopening or reconsideration as a matter of discretion, we lack jurisdiction to review that decision, although we retain jurisdiction to review the denial of *sua sponte* reopening for "legal or constitutional error."  *Lona v. Barr*, 958 F.3d 1225, 1229 (9th Cir. 2020) (quoting *Bonilla v. Lynch*, 840 F.3d 575, 588 (9th Cir. 2016)).  The parties agree that the validity and application of the departure bar in 8 C.F.R. § 1003.23(b)(1) is a question of law, and that because the BIA relied on the departure bar in denying Rubalcaba relief, we can review the BIA's decision.

We generally review the BIA's denial of a motion to reopen for abuse of discretion.  *See Toor*, 789 F.3d at 1059.  But we review the BIA's purely legal determinations de

novo. *Id.* Because the BIA's interpretation of the departure bar "presents a purely legal question" of regulatory interpretation, "we apply de novo review, 'giving appropriate deference to the agency if warranted.'" *Id.* (quoting *Arteaga-De Alvarez v. Holder*, 704 F.3d 730, 735 (9th Cir. 2012)).[4]

## III.

Our review is focused on whether the departure bar limits an IJ's authority to reopen immigration proceedings *sua sponte*, that is, on his or her own motion—a question of first impression for our Circuit.

When Rubalcaba sought to reopen his immigration proceedings in 2016, 8 C.F.R. § 1003.23(b)(1) provided, in relevant part:

> An Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the Board of Immigration Appeals. . . . A motion to reopen must be filed within 90 days of the date of entry of a final administrative order of removal, deportation, or exclusion. . . . *A motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or*

---

[4] Although the IJ gave several other reasons for denying *sua sponte* reopening, including the lack of an "exceptional situation" justifying reopening, we express no opinion on these other reasons because "our review is confined to the BIA's decision and the bases upon which the BIA relied." *Martinez-Zelaya v. INS*, 841 F.2d 294, 296 (9th Cir. 1988).

> *exclusion proceedings subsequent to his or*
> *her departure from the United States.*

8 C.F.R. § 1003.23(b)(1) (2020) (emphasis added).[5]  There is a parallel provision limiting reopening by the BIA.  *See* 8 C.F.R. § 1003.2(d) ("A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States.").

## A.

In *Matter of Armendarez-Mendez*, 24 I. & N. Dec. 646 (BIA 2008), the BIA examined the departure-bar provision[6]

---

[5] As of January 15, 2021, the text of subsection (b)(1) has been amended by regulation.  *See* 85 Fed. Reg. 81,588, 81,655 (Dec. 16, 2020).  The amended regulation preserves most of subsection (b)(1), including the departure-bar language, but replaces the first sentence above with the following: "Unless jurisdiction is vested with the Board of Immigration Appeals, an immigration judge may at any time reopen a case in which he or she has rendered a decision on his or her own motion solely in order to correct a ministerial mistake or typographical error in that decision or to reissue the decision to correct a defect in service.  Unless jurisdiction is vested with the Board of Immigration Appeals, in all other cases, an immigration judge may only reopen or reconsider any case in which he or she has rendered a decision solely pursuant to a motion filed by one or both parties." *See id.* at 81,655; 8 C.F.R. § 1003.23(b)(1) (2021).  Although the new regulation purports to limit the instances in which an IJ may exercise *sua sponte* reopening authority, which might affect Rubalcaba's case on remand, the government concedes that we must evaluate the regulation as it existed and was applied at the time of the BIA's decision.

[6] The BIA's decision focused primarily on 8 C.F.R. § 1003.2(d), which relates to reopening by the BIA, but explained that the language in 8 C.F.R. § 1003.23(b)(1), which relates to reopening by an IJ, was

and "construed the departure bar rule as imposing a limitation on [its] jurisdiction to entertain motions filed by aliens who had departed the United States." *Id.* at 648. According to the BIA, this jurisdictional limitation also applies to requests for *sua sponte* reopening. *Id.* at 660. In other words, the BIA understood the regulation to prevent the IJ or BIA from *considering* reopening a case where a noncitizen had previously left the country during removal proceedings or "after being ordered removed." *Id.* at 648; *see also id.* at 660.

We rejected this interpretation in part in *Toor v. Lynch*, as applied to regular and timely motions for reopening. *See* 789 F.3d at 1057. In *Toor*, we held that an IJ or the BIA cannot apply the departure bar in cases where a noncitizen has filed a timely motion to reopen within ninety days of a final order of removal—regardless of when or how the noncitizen departed the United States. *Id.* That is because the immigration statute permits a noncitizen to file one motion to reopen proceedings within ninety days of a final order of removal without any limitation based on a noncitizen's presence in, or departure from, the United States. *Id.* at 1060; *see* 8 U.S.C. § 1229a(c)(7). In *Toor*, we explained that the BIA's interpretation of the departure bar was impermissible with respect to timely motions to reopen because it conflicted with the "clear and unambiguous" command of the statute. 789 F.3d at 1060–61, 1064; *see* 8 U.S.C. § 1229a(c)(7). As we noted, every other circuit to consider the question has agreed that the departure bar is

---

"[e]ssentially identical." *Matter of Armendarez-Mendez*, 24 I. & N. Dec. at 648. We have previously recognized that *Matter of Armendarez-Mendez* pertains to both of these regulations. *See Toor*, 789 F.3d at 1058–59.

invalid in the context of a single, timely motion to reopen. 789 F.3d at 1057 n.1 (collecting cases).

Because the petitioner's motion to reopen had been timely in *Toor*, we did not need to decide whether an untimely motion that relied on the IJ's or BIA's *sua sponte* reopening authority would be subject to the departure bar. *Id.* Therefore, we left open the question of "the validity of the regulatory departure bar when applied to motions to reopen or to reconsider filed untimely, and thus out of compliance with" the immigration statute. *Id.* We observed, however, that the Second and Fifth Circuits had concluded that the departure bar could be applied in the context of *sua sponte* reopening. *Id.* (citing, *inter alia*, *Zhang v. Holder*, 617 F.3d 650, 660–65 (2d Cir. 2010), and *Ovalles v. Holder*, 577 F.3d 288, 295–96 (5th Cir. 2009)).

We now take up the question that we left open in *Toor*— whether the departure bar limits an IJ's *sua sponte* reopening authority. We conclude that it does not.

**B.**

*Sua sponte* reopening was created by agency regulations; no statute establishes or limits an IJ's or the BIA's authority to reopen a case on their own motion. *See Reyes-Vargas v. Barr*, 958 F.3d 1295, 1302–03 (10th Cir. 2020); *Zhang*, 617 F.3d at 656–57. We evaluate the BIA's interpretation of its own regulations using "the deference framework announced in *Kisor v. Wilkie*." *See Reyes-Vargas*, 958 F.3d at 1300 (citing *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)); *see also Attias v. Crandall*, 968 F.3d 931, 937 (9th Cir. 2020). Here, the relevant interpretation is found in *Matter of Armendarez-Mendez*—the BIA's published decision concluding that the departure-bar provision in 8 C.F.R. § 1003.23(b)(1) deprives an IJ of "jurisdiction to consider [a

noncitizen's] motion sua sponte." *See Matter of Armendarez-Mendez*, 24 I. & N. Dec. at 660.

According to *Kisor v. Wilkie*, we must first determine whether 8 C.F.R. § 1003.23(b)(1) is "genuinely ambiguous." *Attias*, 968 F.3d at 937 (quoting *Kisor*, 139 S. Ct. at 2414). The Supreme Court has cautioned that "when we use that term, we mean it—genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation." *Kisor*, 139 S. Ct. at 2414. These tools include the "text, structure, history, and purpose of [the] regulation." *Id.* at 2415 (citation omitted). If the regulation is not genuinely ambiguous, we do not defer to the agency's interpretation. *Id.* "If genuine ambiguity remains" after exhausting the traditional tools of construction, we must then ask whether the agency's interpretation is reasonable. *Id.* at 2415–16. But even if the agency's interpretation of a genuinely ambiguous regulation is reasonable, "we are not done." *Id.* at 2416. Because "not every reasonable agency reading of a genuinely ambiguous rule" receives deference, we "must make an independent inquiry into whether the character and context of the agency interpretation entitles [the interpretation] to controlling weight." *Id.*

### 1.

Joining the Tenth Circuit, we hold that the departure-bar regulation is not genuinely ambiguous. *See Reyes-Vargas*, 958 F.3d at 1302–03. At all times relevant for Rubalcaba's petition for review, 8 C.F.R. § 1003.23(b)(1) stated:

> An Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the

Board of Immigration Appeals.  Subject to [certain exceptions], a party may file only one motion to reconsider and one motion to reopen proceedings. . . . A motion to reopen must be filed within 90 days of the date of entry of a final administrative order of removal, deportation, or exclusion, or on or before September 30, 1996, whichever is later.  *A motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States.*  Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion. . . .

8 C.F.R. § 1003.23(b)(1) (2020) (emphasis added).  The text, structure, history, and purpose of the regulation make clear that the italicized language above—the departure-bar provision—does not apply in the context of *sua sponte* reopening.  *See Kisor*, 139 S. Ct. at 2415.

First, the plain language of this regulation distinguishes between an IJ's ability to reopen "upon his or her own motion at any time"—an IJ's *sua sponte* reopening authority—and a noncitizen's ability to file one motion to reopen within ninety days of a final order of removal.  *See* 8 C.F.R. § 1003.23(b)(1) (2020).  A "motion to reopen" is limited by time (ninety days) and number (one), unless certain exceptions apply.  *See id.*  By contrast, *sua sponte*

reopening does not require a motion, and has historically been permitted "at any time." *Id.*; *see Menendez-Gonzalez v. Barr*, 929 F.3d 1113, 1116 (9th Cir. 2019). According to the plain text of the regulation, the departure bar applies only to "a motion to reopen or reconsider." *See* 8 C.F.R. § 1003.23(b)(1). The departure-bar provision reads: "*A motion to reopen or to reconsider* shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States." *Id.* (emphasis added). On its face, this sentence says nothing about *sua sponte* reopening authority. *See Reyes-Vargas*, 958 F.3d at 1305.

Second, the structure of 8 C.F.R. § 1003.23(b)(1) confirms this understanding. Viewed in its regulatory context, the departure-bar provision clearly applies to "a motion to reopen," rather than to the agency's *sua sponte* reopening authority. The first sentence of 8 C.F.R. § 1003.23(b)(1) establishes the IJ's authority to reopen cases *sua sponte* "at any time." The regulation then provides, in the alternative, that either party may file a motion to reopen. *Id.* The next three sentences of the regulation expressly limit a "motion to reopen" or a motion to reconsider, establishing time and number limits. *Id.* Again, these time and number limits do not apply to *sua sponte* reopening; the government acknowledges as much. The next sentence of the regulation contains the departure bar. *Id.* This structure supports our conclusion that, like the time and number limits in the preceding sentence of 8 C.F.R. § 1003.23(b)(1), the departure bar does not apply to *sua sponte* reopening.

Third, the history of the regulation reinforces our conclusion that the departure bar does not apply in the context of *sua sponte* reopening. The Attorney General promulgated the regulations containing the departure bar in

1952, as part of the implementation of the Immigration and Nationality Act. *See* 17 Fed. Reg. 11,469, 11,475 (Dec. 19, 1952) (previously codified at 8 C.F.R. § 6.2) ("A motion to reopen or a motion to reconsider shall not be made by or in [sic] behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States."). Several years later, the Attorney General added the provision permitting *sua sponte* reopening before the BIA: "The Board *may on its own motion* reopen or reconsider any case in which it has rendered a decision." *See* 23 Fed. Reg. 9115, 9118 (Nov. 26, 1958) (emphasis added)). In the decades that followed, the Attorney General promulgated regulations establishing the ninety-day time limit for motions to reopen but continued to affirm that *sua sponte* reopening was available "at any time." *See, e.g.*, 61 Fed. Reg. 18,900, 18,904 (Apr. 29, 1996) ("The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision."). After the passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), the Attorney General promulgated the current regulations governing reopening by an IJ. *See* 62 Fed. Reg. 10,312, 10,332–33 (Mar. 6, 1997) (previously codified at 8 C.F.R. § 3.23(b)(1)). The regulations allowed an IJ to reopen proceedings *sua sponte* "at any time" but established certain limits on "a motion to reopen," including the departure bar. *Id.* This history reinforces our conclusion that a request for *sua sponte* reopening is not subject to the departure bar, because *sua sponte* reopening has long provided a separate mechanism for reopening that is not subject to the other regulatory limits on reopening.

Finally, the purpose of the regulation is consistent with our understanding that *sua sponte* reopening is not limited by the departure bar. *Sua sponte* reopening is an entirely

discretionary mechanism.  *See Bonilla*, 840 F.3d at 585. This mechanism is available in cases where the agency is "persuaded that the respondent's situation is truly exceptional" and is often a noncitizen's only option for seeking relief from a final order of removal.  *Id.* (internal citation omitted); *see also In re J-J-*, 21 I. & N. Dec. 976, 984 (BIA 1997) ("The power to reopen on our own motion is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship").  Put another way, *sua sponte* reopening gives the agency flexibility in truly unusual cases in which a noncitizen cannot meet the regulatory requirements for a "motion to reopen" but the agency determines that reopening is still justified by the circumstances.  We agree with the Tenth Circuit that the plain language of the departure-bar regulation—which speaks only of a "motion to reopen" and does not limit *sua sponte* reopening authority—is consistent with this purpose. *See Reyes-Vargas*, 958 F.3d at 1305–06 ("Had the agency written its regulations to attach a post-departure bar to the IJ's and Board's sua sponte authority to reopen removal proceedings, the resulting sua sponte authority would be next to worthless.").

Based on the regulation's text, structure, history, and purpose, we conclude that 8 C.F.R. § 1003.23(b)(1) is not genuinely ambiguous.  *See Kisor*, 139 S. Ct. at 2414–15; *see also Reyes-Vargas*, 958 F.3d at 1306.  Rather, the plain language of 8 C.F.R. § 1003.23(b)(1) makes clear that the departure bar limits only "motions to reopen," not an IJ's *sua sponte* reopening authority.  That is the end of our inquiry under *Kisor*.  *See Attias*, 968 F.3d at 937.  Accordingly, we do not defer to the BIA's contrary interpretation in *Matter of Armendarez-Mendez*.  *See id.* ("If the regulation's text is unambiguous, we give no deference to the agency's

interpretation: '[t]he regulation then just means what it means.'") (quoting *Kisor*, 139 S. Ct. at 2415).

## 2.

We recognize that some of our sister circuits have reached the opposite conclusion. *See Zhang*, 617 F.3d at 664–65; *Ovalles*, 577 F.3d at 295–96. But these circuits did not have the benefit of the Supreme Court's guidance in *Kisor v. Wilkie*, which clarified the framework for deferring to an agency's interpretation of its own regulations. *See Kisor*, 139 S. Ct. at 2414.

Before *Kisor*, we generally evaluated an agency's interpretation of its own regulations using the framework of *Auer v. Robbins*. *See Marsh v. J. Alexander's LLC*, 905 F.3d 610, 623–24 (9th Cir. 2018) (citing *Auer v. Robbins*, 519 U.S. 452 (1997)). *Auer* provided a "deferential standard" under which an agency's interpretation was "controlling unless plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461 (internal quotation marks and citation omitted). This deferential standard is the one the Second Circuit applied in *Zhang v. Holder* and the Fifth Circuit applied in *Ovalles v. Holder*. *See Zhang*, 617 F.3d at 660 (noting that "the BIA's construction is anything but airtight" but concluding that, although the agency's interpretation was "linguistically awkward . . . we cannot say that the Board's construction is plainly erroneous"); *Ovalles*, 577 F.3d at 291–92 (explaining that the court was required to "grant the BIA's interpretation of its own regulations

'considerable legal leeway'") (quoting *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 675 (5th Cir. 2003)).[7]

As the Tenth Circuit—the only circuit to consider the question after *Kisor*—concluded, *Kisor* requires us to "dig deeper" in determining whether a regulation is genuinely ambiguous. *See Reyes-Vargas*, 958 F.3d at 1307 ("We must apply *Kisor*'s framework, whatever . . . any other pre-*Kisor* case held."). We conclude, as the Tenth Circuit did, that the regulation is not genuinely ambiguous under *Kisor*'s exacting framework. *See id.* Therefore, the BIA's interpretation is not entitled to deference.

## IV.

In conclusion, we hold that the BIA erred in determining that the departure bar prevented the IJ from reopening Rubalcaba's immigration proceedings *sua sponte*. Therefore, we grant the petition for review and vacate the BIA's decision. Because we conclude that the plain, unambiguous language of the regulation makes clear that the departure bar does not apply in the context of *sua sponte* reopening, we need not address Rubalcaba's alternative argument that he is not subject to the bar based on the timing of his departure from the United States. We remand to the BIA to consider whether the alternative bases the IJ offered for denying *sua sponte* reopening were permissible. *See INS*

---

[7] The Third Circuit reached the same result in *Desai v. Attorney General*, adopting the Second Circuit's analysis from *Zhang*. *See* 695 F.3d 267, 270–71 (3d Cir. 2012) (citing *Zhang*, 617 F.3d at 665). We note that, post-*Kisor*, the Third Circuit has called this approach into question. *See Ovalle v. Att'y Gen.*, 791 F. App'x 333, 336 (3d Cir. 2019) ("That reasoning . . . does not survive the Supreme Court's recent decision in *Kisor*.").

*v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam); *Lona*, 958 F.3d at 1229.

**PETITION GRANTED.**